Nathan R. Starnes ISB #7484
Laurie Litster Frost ISB #7479
LITSTER FROST INJURY LAWYERS
3501 W. Elder Street, Suite 208
Boise, ID 83705
Email: nathan.starnes@litsterfrost.com
Phone: (208) 489-6400
Fax:    (208) 489-6404
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW MCDERMOTT, an individual<br><br>　　　　　　　Plaintiff(s),<br><br>vs.<br><br>MONDAY MONDAY, LLC, an Idaho limited liability company,<br><br>　　　　　　　Defendant(s). | Case No.   1:18-CV-00079-CWD<br><br>MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND |

### INTRODUCTION

Defendant MONDAY MONDAY, LLC ("Monday"), now a dissolved company, respectfully asks the Court to issue an Order to Require Plaintiff to Post Bond in this case. Monday was a service provider's failed attempt at a blog site that allowed users to upload content through an automated process in order to establish a name for themselves. Despite repeated trainings, one of the users allegedly posted a picture on the site referring only to a New

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 1**

York Post article, while failing to include Plaintiff's name as a photographer credit.

The shareholders of Monday voted the company insolvent and sold the website and assets on August 9, 2017 to satisfy creditors. On November 27, 2017, Plaintiff's attorney, Mr. Liebowitz, filed suit in the Southern District of New York ("SDNY") against Monday. Pursuant to the Digital Millennium Copyright Act, Monday had its website properly registered with the United States Copyright Office, and publicly provided a dedicated email address for copyright issues on its website. Although Monday complied with the law, Mr. Liebowitz filed suit without attempting to notify Monday as required by section 512(c)(3) of the United States Copyright Notice Act.

In response, Monday had to hire an attorney licensed in New York to answer the complaint. Monday filed a motion to dismiss for improper venue and informed Mr. Liebowitz of its intent to pursue attorney's fees. Mr. Liebowitz voluntarily dismissed the New York lawsuit. On February 22, 2018, during a hearing regarding Monday's motion for attorney's fees, SDNY Judge Denise Cote labeled Mr. Liebowitz as a "copyright troll." Judge Cote decried Mr. Liebowitz's filing of over 500 photo infringement lawsuits in less than two years in the SDNY alone. Unfortunately, Judge Cote did not order attorney's fees because the case was voluntarily withdrawn and dismissed.

But just six days later in a separate case, Judge Cote sanctioned Mr. Liebowitz with a $10,000 fine for (1) his failure to serve notice of a pretrial conference, (2) his misrepresentations and omissions in his letter to the court, and (3) his needless imposition of additional costs on the defendant. *Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013 DLC, 2018 U.S. Dist. LEXIS 32730 at *1-2 (S.D.N.Y. February 28, 2018). Mr. Liebowitz negotiated his sanction to $2,000, but the court required him to complete a training in ethics and professionalism. *Id.* at *1. While

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 2**

sanctioning Mr. Liebowitz in *Steeger*, Judge Cote noted that on November 28, 2017, Mr. Liebowitz failed to notify Monday of the pretrial conference in *McDermott v. Monday Monday, LLC* (the predecessor to the case being argued before the Court today, which was withdrawn from SDNY). *Id.* Further, in *Steeger* Judge Cote impugned Mr. Liebowitz's intentions declaring, "Mr. Liebowitz should be sanctioned for his failure to serve the Notice of a Pretrial Conference [and] Mr. Liebowitz's claim that his failure to serve . . . the notice . . . was 'inadvertent' and an 'honest mistake' is unpersuasive given his prior practice before this [c]ourt and in this district." *Id.* at *4. Furthermore, when sanctioning Mr. Liebowitz in *Steeger*, Judge Cote announced that this was not the first time Mr. Liebowitz had failed to communicate with a defendant regarding a pretrial conference. *Id.* at *4.

To illustrate her concerns in *Steeger*, Judge Cote discussed Mr. Liebowitz's conduct in *Pereira v. 3072541 Can. Inc.*, where the defendant learned of the conference on November 28, 2017—just two days before it was scheduled—because Mr. Liebowitz had failed to serve defendants with the pretrial order, even though Mr. Liebowitz was previously instructed to do so. *Id.* citing *Pereira v. 3072541 Can. Inc.*, No. 17-CV-6945 (RA), 2018 U.S. Dist. LEXIS 195406, (S.D.N.Y. Nov. 15, 2018). In *Pereira*, Mr. Liebowitz was placed on notice to review all of his cases for pretrial dates and inform the defendants. *Id.* at *4-5.

In yet another case in the SDNY, a judge stated that Mr. Liebowitz's "history of non-compliance with court orders in similar actions justifies the imposition of a bond." *Leibowitz v. Galore Media, Inc.*, 2018 U.S. Dist. LEXIS 161110, at *10 (S.D.N.Y. Sep. 20, 2018).

Mr. Liebowitz's hyper-litigious behavior, as demonstrated by his history of persistent and flagrant abuse of the SDNY courts, speaks volumes. Although the actions of the SDNY do not bind this Court, the reputation of Mr. Liebowitz from the SDNY should inform this Court. As the

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 3**

SDNY required Mr. Liebowitz to post a bond, so should this Court require Mr. Liebowitz to post bond.

## STATEMENT OF RELEVANT FACTS

1.  On or about February 16, 2018, Plaintiff filed a complaint in the Federal District Court of Idaho alleging a violation of copyright infringement under Section 501 and 1202 of the United States Copyright Act ("Copyright Act").

2.  On or about March 5, 2018, a process server went to the building where Monday used to reside, looking for Suite 110 on the first floor. See Declaration of Anthony Litster ("Litster Decl."), ¶ 2. As Monday was dissolved, another company was occupying Suite 110. See Litster Decl., ¶ 3. The process server went to a law firm on the second floor, housed in Suite 208. See Litster Decl., ¶ 4. Since Monday nor the registered agent were located in the building, the receptionist reached out to Monday and the former registered agent and informed them of the inquiry. See Litster Decl., ¶ 5. Monday was not served. See Litster Decl., ¶ 6.

3.  On or about March 5, 2018, Monday called the process server to find out the name of the attorney on the lawsuit. See Litster Decl., ¶ 7. The attorney of record was Danny Bower. See Litster Decl., ¶ 8. A member of Monday had been neighbors with Mr. Bower for several years. See Litster Decl., ¶ 9.

4.  On or about March 6, 2018, a letter was sent to Mr. Bower's office from a former registered agent of Monday as a courtesy, informing Mr. Bower that the company had wrapped up business in August 2017. See Litster Decl., ¶ 10. The letter also informed Mr. Bower that the former registered agent had been relieved of his duties. See Litster Decl., ¶ 11.

5.  On March 9, 2018, Monday contacted Mr. Bower regarding this lawsuit. See Litster Decl., ¶ 12. Mr. Bower indicated that he did not know anything about the case, and that

MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 4

Mr. Liebowitz was using his office to have an Idaho location. See Litster Decl., ¶ 13. Monday requested that Mr. Bower reach out to Mr. Liebowitz and pass on Monday's contact information. See Litster Decl., ¶ 14; Ex. A.

6. On March 14, 2018, Monday called Mr. Liebowitz's office to follow up. See Litster Decl., ¶ 15. Monday left a message with Mr. Liebowitz's secretary. See Litster Decl., ¶ 16. Mr. Liebowitz returned Monday's phone call. See Litster Decl., ¶ 17. Mr. Liebowitz spent approximately 29 minutes threatening Monday with litigation representing that it would cost the maximum penalties of $150,000 plus "hundreds of thousands of dollars in attorney fees." See Litster Decl., ¶ 18. Mr. Liebowitz accused Monday of running up the attorney fees on the prior SDNY case, which was incorrectly filed by Mr. Liebowitz in New York. See Litster Decl., ¶ 19; Ex. B.

7. Mr. Liebowitz complained that Monday hired a New York attorney to defend that case, and threatened Monday stating that Monday should have "just called and settled—but now it was going to cost [Monday] a lot more." See Litster Decl., ¶ 20. Monday informed Mr. Liebowitz that the company was no longer in operation. See Litster Decl., ¶ 21. Mr. Liebowitz then threatened he would "pierce the corporate veil and freeze former members' personal bank accounts." See Litster Decl., ¶ 22. Mr. Liebowitz accused Monday of avoiding service of the complaint and summons. See Litster Decl., ¶ 23.

8. Monday then reminded Mr. Liebowitz that Monday was not avoiding service, but rather was actively reaching out to Mr. Bower and Mr. Liebowitz to figure out how to get a copy of the complaint. See Litster Decl., ¶ 24.

9. To demonstrate its willingness to receive service and cooperate, Monday provided Mr. Liebowitz with a current email address and telephone number. See Litster Decl., ¶ 25. Mr.

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 5**

Liebowitz agreed to the paperwork and Monday agreed to sign a form accepting service, upon receipt of the documents via email. See Litster Decl., ¶ 26.

10. Mr. Liebowitz never followed through by emailing the documents. See Litster Decl., ¶ 27. Instead, Mr. Liebowitz used Monday's phone number as a way to continue settlement negotiations with Monday on a sporadic basis while at the same time moving the case forward by failing to notify Monday of any hearings or deadlines. See Litster Decl., ¶ 28.

11. On March 16, 2018, Monday called Mr. Liebowitz and left a message. See Litster Decl., ¶ 29; Ex. C.

12. On March 19, 2018, Monday called Mr. Liebowitz again. See Litster Decl., ¶ 30. Mr. Liebowitz returned the phone call. See Litster Decl., ¶ 31; Ex. D. Monday informed Mr. Liebowitz it was able to raise $1,600 to settle the matter. See Litster Decl., ¶ 32. Mr. Liebowitz again threatened Monday. See Litster Decl., ¶ 33. Mr. Liebowitz warned Monday of how the Court would award hundreds of thousands of dollars in attorney fees, and pierce the corporate veil to pursue any personal assets, including vacation homes or properties. See Litster Decl., ¶ 34.

13. On March 21, 2018, Mr. Liebowitz provided Monday his cell phone number so Monday could text an image of the US Bank print out Monday received when the company bank accounts had been closed on September 5, 2017. See Litster Decl., ¶ 35. Monday then sent the picture of this bank letter. See Litster Decl., ¶ 36; Ex. E.

14. On April 18, 2018, Monday once again called Mr. Liebowitz to follow up. See Litster Decl., ¶ 37; Ex. F. Monday informed Mr. Liebowitz that it had raised some money and could increase the settlement offer to $2,350. See Litster Decl., ¶ 38. Mr. Liebowitz continued to threaten Monday, and then said he would talk with his client. Mr. Liebowitz never called

Monday with an update. See Litster Decl., ¶ 39.

15.     On May 4, 2018, Monday was very concerned with Mr. Liebowitz's lack of communication, so Monday once again called Mr. Liebowitz's office to see if Mr. Liebowitz had discussed the matter with his client. See Litster Decl., ¶ 40; Ex. G. Monday, again, did not receive a call back. See Litster Decl., ¶ 41.

16.     On May 8, 2018, Monday again called Mr. Liebowitz to see if he had discussed the case with his client. See Litster Decl., ¶ 42; Ex. H. Monday told Mr. Liebowitz that it had put a car up for sale and could raise another $2,000, increasing the settlement offer to $5,300. See Litster Decl., ¶ 43. Mr. Liebowitz demanded $20,000, reasoning that he had "already spent $15,000 in filing for a judgment on the case." See Litster Decl., ¶ 44. Mr. Liebowitz spent several minutes repeating his threats to Monday, continued to accuse Monday, and stated that all these extra costs were Monday's fault because Monday fought the case in New York and didn't "just settle." See Litster Decl., ¶ 45.

17.     Up to this point, Monday believed these negotiations were in lieu of litigation. See Litster Decl., ¶ 46.

18.     Immediately after that call, Monday googled the judgment Mr. Liebowitz mentioned on the call. See Litster Decl., ¶ 47. Monday discovered that two hours later, that same day, there was a teleconference hearing scheduled with the judge. See Litster Decl., ¶ 48. Mr. Liebowitz neglected to mention anything about a pre-trial conference call when he spoke with Monday earlier that day. See Litster Decl., ¶ 49.

19.     Monday immediately texted Mr. Liebowitz's cell phone, hoping Mr. Liebowitz's conference line could be used for the hearing so Monday could participate in the call. See Litster Decl., ¶ 50; Ex. I. Mr. Liebowitz did not respond to Monday's text. See Litster Decl., ¶ 51.

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 7**

20. Attempting to participate in the scheduling conference, Monday then called Mr. Liebowitz's office and left a message with a secretary, hoping to be included in the scheduling conference. See Litster Decl., ¶ 52.

21. Monday then called the court, hoping to be included in the scheduling conference, but no one at the Court answered. See Litster Decl., ¶ 53.

22. On May 11, 2018 Monday found an email for Amy Tate (amy_tate@id.uscourts.gov), the courtroom Deputy to Judge Dale. See Litster Decl., ¶ 54. Monday sent Amy Tate a message that it had just learned of the filing for judgment. See Litster Decl., ¶ 55. Monday explained that it had not yet been served and had been negotiating in good faith with Mr. Liebowitz. See Litster Decl., ¶ 56. Monday informed the Court in its email that it was "in the process of hiring an attorney to answer the complaint." See Litster Decl., ¶ 57; Ex. J.

23. On May 14, 2018, Amy Tate replied and copied Mr. Bower's office, explaining the restriction against ex parte communications with the Court, and stated that Mr. Liebowitz would need to file a pro hac vice application. See Litster Decl., ¶ 58; Ex. J.

24. On May 18, 2018, a Clerk's Entry of Default was entered against Monday.

25. Monday was unrepresented during these negotiations and unaware of Federal Rule of Civil Procedure's Rule 68 requirement to serve the proposed offer to the opposing party. See Litster Decl., ¶ 59.

26. Throughout the duration of these negotiations between Monday and Mr. Liebowitz, Monday was a willing participant, cooperating in the hope of reaching a settlement. See Litster Decl., ¶ 60.

27. On May 22, 2018, Mr. Liebowitz also labelled Monday as a repeat infringer in his Memorandum of Law In Support of Default Judgment. (See Memorandum of Law In Support Of

Default Judgment, Page 8).

28.   The infringement by Plaintiff occurred in the same article, on the same day, by the same person. See Litster Decl., ¶ 61. This is the first and only accusation of copyright infringement in the history of Monday's existence. See Litster Decl., ¶ 62.

29.   On June 6, 2018, Monday obtained counsel in Idaho. See Litster Decl., ¶ 63.

30.   On June 6, 2018, a Motion to Set Aside Default Judgment was filed on behalf of Monday.

31.   On August 15, 2018, the Court granted Monday's motion and set aside the default.

32.   On August 27, 2018, Monday was properly served.

33.   On October 8, 2018, Monday sent an Offer of Judgment to Plaintiff.

34.   On October 22, 2018, Monday's Offer of Judgment expired due to Plaintiff's failure to respond.

## ARGUMENT

### I.   THE COURT SHOULD ORDER PLAINTIFF TO OBTAIN A BOND.

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure and Rule 65.2 of the Idaho District Local Rules, Defendant moves this Court for an Order requiring Plaintiff to obtain a bond prior to further litigation of this case. District of Idaho Local Civil Rule 65.2 states that a judge may order a party to provide security in the form of a bond to cover any cost that may be awarded, provided that good cause is shown.

A.   <u>Monday has offered a settlement amount greater than Plaintiff is likely to recover.</u>

Monday is confident that even if a favorable outcome for Plaintiff were to occur, Plaintiff would not recover as much at trial as Monday has already offered. Under section 504 of the

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 9**

Copyright Act, a party may recover either actual or statutory damages. 17 U.S.C. § 504(a) (2010).

Actual damages are the damages suffered as a result of the infringement, including the fair market value of the copyright license and wrongfully obtained profits by the alleged infringer. *See Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 707-08 (9th Cir. 2004).

Statutory damages for a non-willful infringement are not less than $750 and no more than $30,000 per infringement. *See* § 504(c)(1). If the copyright owner proves that an infringement was willfully committed, the court may impose an increased damage amount of up to $150,000. *Id.* at 504(c)(2). In determining the appropriate statutory damages amount most jurisdictions have found that where a willful infringement has occurred, "the general approach taken by courts in determining statutory damages [is to treble the licensing fee]." *See FameFlynet, Inc. v. Shoshanna Collection, LLC*, 282 F. Supp. 3d 618, 627 (S.D.N.Y. 2017) (finding that the plaintiff's request for the court to raise the amount of statutory damages plaintiff sought from $25,000 to $150,000 for willful infringement was inconsistent with the "general approach of trebling the *highest* licensee fee paid for use of the works" (emphasis added)). The prevailing practice in courts throughout the country is to award three times the amount of the licensing fee. *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994); *e.g. Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F. 2d 233, 237 (5th Cir. 1988) (stating that statutory damages under Section 504(c) of the Copyright Act should be three times the amount of the licensing fee); e.g. *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988) (when a violation is deemed willful the proper damage amount is three times the cost to purchase a license).

In both this case and in its SDNY predecessor, Monday made numerous good faith settlement offers, all of which were summarily rejected by Mr. Liebowitz. The copyrighted work

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 10**

at issue here are two photographs of Daniela Greene, and would have a licensing value between $200 and $500 per photograph.[1] Monday's profits on the alleged infringement were only $28 dollars.

If Plaintiff was awarded actual damages, he would receive, at most, $1,000 for the licensing fee and Monday's profits on the alleged infringements in the sum of $28, for a total of $1,028. Monday's settlement offer was $3,000, nearly three times the amount of actual damages alleged in this case.

If Plaintiff elects to pursue statutory damages, and if Plaintiff is successful in demonstrating that Monday willfully infringed, the damages would be, at most, $1,500 per infringement: three times the $500 licensing fee. Monday's Offer of Judgment was six times the licensing fee.

As Monday has offered a settlement amount greater than Plaintiff is likely to recover, the Court should order Plaintiff to obtain a bond.

  B. <u>A bond is necessary to ensure Plaintiff can cover the potential costs of an award in Monday's favor.</u>

Pursuant to Section 505 of the Copyright Act, costs and attorney's fees may be awarded to a prevailing party. A principle factor the court considers in determining whether to require a bond is the plaintiffs' and defendants' "financial condition and ability to pay." *Reynolds v. Hearst Communs., Inc.*, No. 17-CV-6720 DLC, 2018 U.S. Dist. LEXIS 35453 at *5 (S.D.N.Y. March 5, 2018). Several recent cases filed by Mr. Liebowitz were dismissed from the bench as frivolous. In one frivolous case, "Judge Kaplan noted that he 'awarded over $121,000 in attorney's fees against a client of Mr. Liebowitz in three other, related copyright infringement

---

[1] Getty Images, the world's largest repository for licensing photographs, offers a category of celebrity sightings. The photographs of celebrities were priced at $200-$500 per license. See https://www.gettyimages.com/photos/celebrity-sightings. See also https://www.gettyimages.com/plans-and-pricing.

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 11**

cases that were dismissed from the bench.'" *Id.* at *9.

Here, Plaintiff Matthew McDermott is an individual, and in the event that Plaintiff is ordered to pay attorney's fees, it is unlikely that Plaintiff will be able to afford to cover Monday's costs and attorney's fees. Requiring Plaintiff to post a bond is a reasonable requirement to protect the parties from accruing unnecessary costs in this litigation and ensuring Monday will be compensated if it is awarded costs.

As it is unlikely that Plaintiff can cover the potential costs of an award in Monday's favor, the Court should order Plaintiff to obtain a bond.

C. <u>A bond is necessary in this case to prevent frivolous litigation and promote timely resolution.</u>

The attorney for plaintiff, Mr. Liebowitz, has a propensity to fail to notify parties of scheduled hearings, has misrepresented or omitted facts to numerous courts, and has needlessly delayed litigation several times, which increased the costs imposed on defendants. *See Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013 DLC, 2018 U.S. Dist. LEXIS 32730 at *1-2 (S.D.N.Y. February 28, 2018).

Undeterred by his sanctions, Mr. Liebowitz is still behaving egregiously, only now in the District of Idaho. Here, lacking good faith, Mr. Liebowitz first filed his complaint and then communicated with Monday regarding potential settlement negotiations. While negotiating settlement with Monday, Mr. Liebowitz deceptively continued to litigate the case without notifying Monday. Mr. Liebowitz's actions here are virtually identical to those for which he was sanctioned in *Steeger*. In *Steeger*, Mr. Liebowitz was in contact with attorneys for defendant for several months, but never communicated to them his intent to file for default due to Defendant's failure to file an answer. *Id.* at *3. Instead, while pretending to negotiate a resolution, Mr. Liebowitz purposely failed to notify the party of any scheduling conferences or deadlines, and

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 12**

attempted to obtain a default judgment. *Id.* at *2-3.

Mr. Liebowitz is already aware that this outrageous behavior is far below the standard federal courts expect of attorneys. *See id.* at *5-6. Mr. Liebowitz was warned in November of 2017, prior to being sanctioned in *Steeger*. *See id.* at *4-5. Mr. Liebowitz was instructed by Judge Ronnie Abrams of the SDNY to review his cases and notify all opposing parties of any pretrial hearings or notices. *See id.* In fact, one of the cases mentioned was this case's predecessor in the SDNY, *McDermott v. Monday Monday, LLC*, No. 17-CV-9230 DLC, 2018 U.S. Dist. LEXIS 28664, (S.D.N.Y Feb. 22, 2018). As recently as September of 2018, in *Leibowitz v. Galore Media*, a $10,000 bond was issued, almost exclusively based on Mr. Leibowitz's reputation with the court. Upon a Motion for Reconsideration, the court declared that "[j]udges in this [d]istrict have held, relying solely on [Mr. Liebowitz]'s record 'in some of the over 500 cases he has filed in this district in the past twenty-four months' that 'imposition of a bond is entirely appropriate." *Leibowitz v. Galore Media, Inc.*, No. 18-Civ.2626 RA HBP, 2018 U.S. Dist. LEXIS 161110 *10-11 (S.D.N.Y. September 20, 2018).

Given the procedural history here, coupled with Mr. Liebowitz's questionable litigation tactics, the Court should order Plaintiff to obtain a bond to prevent frivolous litigation and to promote timely resolution.

D.  <u>Mr. Liebowitz's behavior has prompted some courts to move for a bond *sua sponte*.</u>

The issuance of a bond is traditionally made only when one party has demanded the court require one. However, Mr. Liebowitz's poor reputation has prompted "multiple courts, on their own initiative, [to] order[] Mr. Liebowitz to show cause why [Mr. Liebowitz] should not be required to post security for costs as a condition of proceeding further with an action." *Reynolds*, No. 17-CV-6720 DLC, 2018 U.S. Dist. LEXIS 35453 at *9-10. To justify moving for a bond *sua*

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 13**

*sponte*, the judge in *Reynolds* pointed out that many of the 500 cases Mr. Liebowitz has filed in the last twenty-four months have been dismissed as frivolous from the bench or resulted in substantial attorney's fees being awarded against Mr. Liebowitz's client. *Id.* at *9.

As Mr. Liebowitz's behavior has prompted some courts to move for a bond *sua sponte*, it is reasonable that this Court should grant Defendant's motion and require Plaintiff to obtain a bond.

> E. <u>Mr. Liebowitz has already misled this Court, and bond is necessary to deter Mr. Liebowitz from the same misconduct moving forward.</u>
>
>   a. Mr. Liebowitz deliberately misled the Court regarding effective service on Monday.

Although an affidavit was provided by Tri-County Process Serving, when Monday was unrepresented, Monday called and asked for the documentation that would verify the affidavit, but Tri-County was unable to produce it. This is because Monday was not properly served at that time.

Monday notified Amy Tate via email on May 11, 2018 that service was ineffective, and Amy Tate copied Mr. Bower on her response. Monday directly told Mr. Liebowitz it had not been served, and provided Mr. Liebowitz an email address and a phone number so as to make service effective. Even though Monday notified the Court that service was ineffective which subsequently notified Mr. Bower, and Monday notified Mr. Liebowitz directly, Mr. Liebowitz went forward anyway and misled the Court regarding proper service. Mr. Liebowitz filed a Memorandum of Law In Support of Default Judgment on May 22, 2018 wherein he stated that service was effective March 5, 2018, despite Monday's May 11, 2018 protests of improper service.

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 14**

The Court should require Mr. Liebowitz to post bond because his misrepresentations to the Court regarding proper service of Monday speak to Mr. Liebowitz's improper and abusive tactics and intentions to use the Courts as a weapon to harm lay citizens.

      b. Mr. Liebowitz exhibited bad faith by deliberately misleading the Court regarding Monday's participation in the negotiations.

This is perhaps the most reprehensible of Mr. Liebowitz's actions. Mr. Liebowitz represented to this Court on May 22, 2018 that Monday showed an "utter disregard" for the court proceedings, and that Monday's alleged disregard was enough to justify finding willfulness on Monday's part. (Memorandum of Law In Support of Default Judgment, Page 6). Yet Monday was an active party, consistently reaching out to Mr. Liebowitz, trying to resolve this matter. Mr. Liebowitz painted Monday as a non-responsive repeat infringer, all of which is false. Mr. Liebowitz wrote that Monday chose to ignore and avoid the proceedings, yet Monday's non-response was due to Mr. Liebowitz's lack of honest communication and professional courtesy with Monday. (Memorandum of Law In Support of Default Judgment, Page 8).

On May 22, 2018, Mr. Liebowitz filed his Memorandum of Law In Support of Default Judgment with the Court. In it Mr. Liebowitz made several false and misleading statements about Monday's attempts to participate in the legal proceedings of this case. A selection of these misleading statements are restated here, with emphasis. "Here, Defendant's *utter disregard for this proceeding in its entirety* warrants the Court's finding of willfulness." (See Memorandum of Law In Support Of Default Judgment, Page 6, emphasis added). "Defendant's state of mind, to the extent that it is possible to evaluate given *its choice to ignore and avoid these proceedings*, is culpable. Moreover, the abstention from these legal proceedings should be construed against Defendant." (See Memorandum of Law In Support of Default Judgment, Page 8, emphasis

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 15**

added). "The expenses saved by Defendant in this case are difficult to quantify because *Defendant has chosen not to participate in litigation.* However, the exclusive nature of McDermott's photographs should be considered in assessing their fair market value. Unfortunately, *because Defendant has chosen to ignore and avoid these proceedings*, Plaintiff is not in a position to assess Defendant's profits resulting from the infringement." (See Memorandum of Law In Support of Default Judgment, Page 8, emphasis added). And, "Defendant has *shown no interest in this litigation.*" (See Memorandum of Law In Support of Default Judgment, Page 9, emphasis added).

These statements are patently false. Even ignoring the active participation of Monday in the prior SDNY litigation that resulted in withdrawal by Plaintiff, in the months of March, April and May of 2018 alone, Monday called Mr. Liebowitz no fewer than seven separate times, and texted Mr. Liebowitz twice. Nine separate proactive contacts from Monday to Mr. Liebowitz in three months demonstrated Monday's interest. Mr. Liebowitz's statements to the Court were patently false, all made with the deliberate intention to deceive the Court.

Mr. Liebowitz misrepresented the actual happenings of the negotiations to the Court. This is unethical behavior for an attorney. Such behavior must not be condoned. This abuse of the legal system is worthy of sanction, as the courts in the Southern District of New York have already had the misfortune of discovering. The Court should require Mr. Liebowitz to post bond in order to send a message that misleading the Court will not be tolerated in the District of Idaho.

F.      <u>Bond is necessary to deter Mr. Liebowitz's overaggressive assertions of copyright claims.</u>

The Copyright Act was not meant to be used as a weapon powered by information asymmetry and power imbalance. Surely this legislation is not meant for corrupt attorneys to use

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 16**

to bludgeon lay citizens and small businesses into settling claims for much more than those claims are worth. Judge Hellerstein in the Southern District of New York observed the need to use the Copyright Act as it was intended in an online piracy case. Although not persuasive, his observation is informative. "There is no doubt that online piracy of digital media is a major problem today. Ordinarily, the 'federal court system provides litigants with some of the finest tools available to assist in resolving disputes.' Those tools can empower copyright-owners to enforce their rights, but they are also capable of being used as instruments of abuse. Where abuse is likely, as it is here, courts should not make those tools available without careful scrutiny." *Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 87751, at *16 (S.D.N.Y. July 6, 2015) quoting *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 89-90 (E.D.N.Y. 2012). Here, Mr. Liebowitz is using the tools of the Copyright Act as "instruments of abuse." Bond is necessary to prevent Mr. Liebowitz from accessing these tools and abusing Monday and others.

Judge Beckerman in the District of Oregon also observed a similar abuse taking place in her forum, also in relation to piracy cases. "The Copyright Act, as it is being enforced in these BitTorrent cases, has created results inconsistent with the goals of the Act. When an individual who has illegally downloaded a movie is contacted by Plaintiff's counsel, and faces the threat of a statutory damage award that could theoretically reach $150,000 (see 17 U.S.C. § 504(c)(2)), as well as the threat of a substantial attorney fee award, the resulting bargaining process is unequal, and unfair." *Cobbler Nev., LLC v. Anonymous Users of Popcorn Time*, No. 3:15-cv-01550-SB, 2016 U.S. Dist. LEXIS 105333, at *12-13 (D. Or. Aug. 10, 2016).

Here, Mr. Liebowitz is using the same blueprints as the Plaintiffs' attorneys in *Cobbler* and *Malibu Media*: file hundreds of cases to cast a wide enough net to catch some disadvantaged

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 17**

and uninformed folks to loot. This is a shake down. As in *Cobbler*, the bargaining process for Monday has been "unequal, and unfair." Bond is an effective means to prohibit Mr. Liebowitz from exploiting the legal system to his own nefarious advantage.

This memorandum is in support of posting bond as a deterrent. Fee-shifting is another effective method of preventing copyright trolls from abusing lay citizens and small businesses. The reasoning for posting bond and fee-shifting are the same or similar. The Supreme Court affirmed fee-shifting in order to "deter…overaggressive assertions of copyright claims…even if the losing position was reasonable in a particular case. See, e.g., *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–595 (C.A.6 2008) (awarding fees against a copyright holder who filed hundreds of suits on an overbroad legal theory, including in a subset of cases in which it was objectively reasonable); *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989, 195 L. Ed. 2d 368 (2016).

Here, Mr. Liebowitz has asserted an overaggressive copyright claim because his process has worked in the past to extort lay citizens and small businesses. Bond is an effective method of preventing the abuse of the court system, as well as an effective way of stopping Mr. Liebowitz's abuse further upstream rather than waiting until fee-shifting.

## CONCLUSION

For the foregoing reasons, Defendant respectfully prays the Court grant Defendant's Motion to Require Plaintiff to Post Bond in an amount deemed reasonable by this court, but not less than $10,000.

DATED this 25TH day of January, 2019

                                         LITSTER FROST INJURY LAWYERS

                                         /s/ Nathan R. Starnes

                                         NATHAN R. STARNES
                                         Attorneys for Defendant

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 19**

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this ____ day of January, 2019 I caused a true and correct copy of the foregoing to be served to each of the following individuals by the method(s) listed below.

| | |
|---|---|
| Daniel W. Bower, ISB #7204<br>MORRIS BOWER & HAWS PLLC<br>12550 W. Explorer Drive, Suite 100<br>Boise, Idaho 83713<br>Telephone: (208) 345-3333<br>Fax No.: (208) 345-4461<br>dbower@morrisbowerhaws.com | [ ] U.S. Mail, Postage Prepaid<br>[ ] Hand Delivery<br>[ ] Overnight Delivery<br>[ ] Electronic Mail<br>[ ] Facsimile<br>[X] iCourt |

                                                /s/ Nathan R. Starnes
                                                Nathan R. Starnes

**MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST BOND - 20**