# EXHIBIT F

◆ Last updated December 11, 2018  01:29:45 pm GMT

# *Sailor Music v. IML Corp.*

United States District Court for the Eastern District of Michigan, Southern Division

November 10, 1994, Decided

Case No. 94-CV-71172-DT

## Reporter

867 F. Supp. 565 *; 1994 U.S. Dist. LEXIS 16085 **; 35 U.S.P.Q.2D (BNA) 1306 ***; 1994 WL 637438

SAILOR MUSIC, NO THOUGHT MUSIC, PERREN-VIBES MUSIC, INC., POLYGRAM INTERNATIONAL PUBLISHING, INC., BROCKMAN MUSIC, JASPERILLA MUSIC CO., MCA, INC., ZAPPO MUSIC, BASICALLY GASP MUSIC AND BOB-A-LEW SONGS, Plaintiffs, v. IML CORPORATION, GERALDINE BENSMILLER AND ALFRED R. BENSMILLER, Defendants.

## Case Summary

### Procedural Posture

Plaintiffs filed a motion for summary judgment contending that there were no genuine issues of material fact in the controversy under *Fed. R. Civ. P. 56* in an action where plaintiffs alleged that defendants infringed plaintiffs' copyrights and requested an injunction, damages, and costs.

### Overview

Plaintiffs were members of the American Society of Composers, Authors, and Publishers and had granted a non-exclusive right to license non-dramatic public performances of plaintiffs' copyrighted compositions. Plaintiffs alleged that defendants refused to obtain a license and played copyrighted material without authorization. Plaintiffs satisfied all the elements required to show that defendants infringed plaintiffs' copyrights. The court held that individual defendants, the corporate officers, were vicariously and personally liable. The court ordered injunctive relief as plaintiffs presented substantial evidence of further copyright infringement. Further, the court awarded plaintiffs statutory damages and costs as defendants had purposely infringed plaintiffs' copyrights.

### Outcome

The court granted plaintiffs' motion for summary judgment and held that defendants and individual defendants had infringed plaintiffs' copyrights when defendants played copyrighted material without authorization. The court ordered an injunction and awarded damages and costs in favor of plaintiffs.

**Counsel:** [**1] For Plaintiff: Cynthia Thomas, Esq., Detroit, MI.

For Defendants: George F. Borgelt, Dearborn Heights, MI.

**Judges:** Cook, Jr.

**Opinion by:** JULIAN ABELE COOK, JR.

## Opinion

[***1307] [*567] ORDER [1]

---

[1] This Order ratifies an Order that was given orally by the

This case involves claims of infringement of copyrights and arises under the Copyright Act, 17 U.S.C. § 501, et seq. The Plaintiffs are members of the American Society of Composers, Authors, and Publishers [***1308] (ASCAP) [2], to which they have granted a non-exclusive right to license non-dramatic public performances of their copyrighted musical compositions. The Defendant, IML Corporation (IML), is a Michigan corporation whose principal shareholders are the Defendants, Geraldine Bensmiller and Alfred R. Bensmiller.

[**2] In January 1990, IML opened "Marilyn's on Monroe" (Marilyn's), a bar and grill which offers live disc-jockey music and a dance floor to the general public. Shortly after "Marilyn's" opened, the ASCAP representatives and the Bensmillers engaged in a series of written and oral communications between February 1990 and November 1990, all of which related to the acquisition of an ASCAP license for the business. However, the Bensmillers refused ASCAP's entreaties to obtain an ASCAP license that would apply to "Marilyn's." [3]

Nearly three years later, ASCAP, believing that the Bensmillers had been playing copyrighted material without its authorization, sent two of its representatives, Kenneth Adams and James [**3] Vanhecke, to "Marilyn's" on December 4-5, 1993 to conduct an investigation. Both of them confirmed their suspicions and concluded that "Marilyn's" was playing copyrighted material without authorization. [4]

Shortly thereafter, ASCAP presented its findings and conclusions to the management [*568] of "Marilyn's," along with its proposal that the Bensmillers pay the fee for the three year period when the business was operated without [**4] an ASCAP license. The offer was rejected. As a result, the Plaintiffs filed the present cause of action on March 25, 1994, in which they charged the Defendants with five counts of copyright infringement and sought (1) an injunctive order that would prohibit "Marilyn's" from any further infringement upon their copyrights and upon all other copyrights in the ASCAP repertoire, (2) statutory damages in the amount of $ 10,000 (i.e, $ 2,000 for each alleged copyright violation), and (3) costs and attorney's fees in the sum of $ 4,185. [5] on September 14, 1994, the Plaintiffs

---

Court at the conclusion of a hearing on October 25, 1994. To the extent that there are any inconsistencies between the two Orders, the instant written Order shall prevail.

[2] ASCAP has more than 55,000 members. It licenses thousands of music users, including radio and television networks, commercial radio and television stations, restaurants, nightclubs, and other establishments whose owners desire to perform or play lawfully copyrighted musical compositions in the ASCAP repertoire. When such entities refuse to obtain a license from ASCAP and perform or play copyrighted material, they infringe upon the copyright interests of the ASCAP's members who have a cause of action for the infringement activity. See generally Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 60 L. Ed. 2d 1, 99 S. Ct. 1551 (1979).

[3] In April 1992, "Marilyn's," through the efforts of Mrs. Bensmiller, submitted an application for an ASCAP license which bore a material alteration to the printed fee structure in the form. As a result, ASCAP rejected the altered application and returned it, as well as the accompanying remittance of $ 121.00, to her.

[4] Adams and Vanhecke have submitted affidavits in which they assert that five ASCAP songs were played at "Marilyn's" on the nights of December 4-5, 1993: (1) Jet Airliner, (2) Reunited, (3) Stuck on You, (4) Your Mama Don't Dance, and (5) Jacob's Ladder. The Adams and Vanhecke affidavits consisted of the handwritten notes that had been written by them while they were at "Marilyn's," as well as a formal ASCAP report that was based on the content of the notes. The two affidavits support the Plaintiffs' contention that these identified songs are copyrighted material which belong to ASCAP's members.

[5] This request is based upon the following computation:

Go to table1

25 attorney hours at $ 135.00/per hour

$ 3,375

Costs in filing, xerox, messengers, etc.

filed a motion for summary judgment, contending that there are no genuine issues of a material fact in this controversy. *FED. R. CIV. P. 56*. As of this date, none of the Defendants have submitted any opposition pleadings to the pending motion.

## ANALYSIS

Under *Federal [**5] Rule of Civil Procedure 56*, a summary judgment is to be entered if the moving party demonstrates the absence of all genuine issues of a material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. This "burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. In making this evaluation, a court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company, 948 F.2d 283 (6th Cir. 1991)*. If this burden is met by the moving party, the failure of the non-moving party to make a showing that is "sufficient to establish the existence of an [***1309] element essential to that party's [**6] case, and on which that party will bear the burden of proof at trial . . . ." will mandate the entry of a summary judgment. *Celotex, 477 U.S. at 322-23*.

### 1. Copyright Infringement

In the present cause, the Plaintiffs have submitted substantial evidence which supports their allegations that five copyrighted songs were played at "Marilyn's" on the night of December 4-5, 1993. No genuine issue of a material fact remains as to these allegations inasmuch as the Defendants have neither produced any evidence to rebut them nor denied their validity.

Beyond proving that the performance of copyrighted songs had occurred, the Plaintiffs must establish the following elements of copyright infringement: (1) the originality and authorship of the compositions involved (2) compliance with the formalities of the Copyright Act, (3) ownership of copyrights, (4) performance of compositions for profit, and (5) unauthorized performance. *See, e.g., Blendingwell Music, Inc. v. Moor-Law, Inc., 612 F. Supp. 474 (D. Del. 1985); Almo Music Corp. v. 77 East Adams, Inc., 647 F. Supp. 123 (N.D. Ill. 1986);* [**7] *Little Mole Music v. Spike Inv., Inc., 720 F. Supp. 751 (W.D. Mo. 1989); Flyte Tyme Tunes v. Miszkiewicz, 715 F. Supp. 919 (E.D. Wis. 1989)*.

In the present case, the Plaintiffs have demonstrated that the performance of the compositions was unauthorized by ASCAP and was done for commercial purposes and profit by the Defendants. Moreover, they have demonstrated compliance with the first three elements of copyright infringement by submitting copies of copyright registration certificates for the five songs at issue *Id. at 921*. Hence, there is no question that the Plaintiffs have satisfied all of the elements of copyright infringement.

### 2. Remedies

#### a. Vicarious Liability

A corporate officer may be held vicariously liable under the Copyright Act when:

> [*569] (1) the officer personally

---

$ 810

Subtotal

$ 4,185

participated in the actual infringement; or (2) the officer derived financial benefit from the infringing activities as either a major shareholder in the corporation, or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement; or (3) the officer [**8] used the corporation as an instrument to carry out a deliberate infringement of copyright; or (4) the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement; or (5) on the basis of some combination of the above criteria.

Marvin Music Co. v. BHC Limited Partnership, 830 F. Supp. 651, 654-55 (D. Mass. 1993) (general manager of club, and president of corporation which was general partner of limited partnership that owned and operated club, was jointly liable for copyright infringements); see also Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assoc., Inc., 423 F. Supp. 341, 344 (D. Mass. 1976), aff'd, 554 F.2d 1213 (1st Cir. 1977).

There is no doubt that the Bensmillers should be personally liable for the claimed copyright infringements inasmuch as they, as the sole owners of IML, derived financial benefit from the infringing activities that occurred at "Marilyn's." Moreover, the record clearly identifies Mrs. Bensmiller as the dominant influence in IML, as well as the officer who determined the policies and practices [**9] at "Marilyn's" which resulted in the deliberate copyright infringement of the ASCAP material. She, who had owned another bar (to wit, "The Old Detroit") which had held an ASCAP license, understood the need for such a license and knew, or should have known, that the utilization of ASCAP materials without a license would be in violation of the copyright laws. [6] Furthermore, there is uncontradicted evidence that Mrs. Bensmiller told ASCAP for three consecutive years that neither IML nor "Marilyn's" would acquire an ASCAP license, despite having received many warnings that the unauthorized use of the music would constitute an infringement upon the Plaintiffs' copyright interests. Thus, it is clear that she was an active agent in the copyright infringement which followed.

[**10] Similarly, Mr. Bensmiller, although a more passive actor in the management of "Marilyn's," must be held as responsible for the copyright infringement as his wife. He not only derived financial benefits from the unauthorized use of subject ASCAP material in his capacity as the half owner of IML, but also, as a general manager of [***1310] "Marilyn's," was responsible for the policy of neglect which resulted in the infringement of the Plaintiffs' copyright interests.

Accordingly, IML and the Bensmillers are determined to be jointly and severally liable for the copyright violations which took place at "Marilyn's" on December 4-5, 1993.

b. *Injunctive Relief*

The Copyright Act provides that "any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502 (a). Moreover, courts generally grant permanent injunctions once liability has been established if there is a "substantial likelihood of further infringement." Pedrosillo Music, Inc. v. Radio Musical Inc., 815 F. Supp. 511, 516 (D. P.R. 1993). [**11]

---

[6] At some time between 1990 and 1993, Mrs. Bensmiller attempted to obtain an ASCAP license at a discounted rate. This lends credence to the Plaintiffs' assertion that she was aware of her obligation to secure a license in order to lawfully utilize copyrighted materials. See supra note 2.

Permanent injunctions are typically granted when there is evidence of an unlawful encroachment upon any musical composition that has been licensed through ASCAP because of the strong probability that unlawful performances of other copyrighted material will occur. See, e.g., Marvin Music Co., 830 F. Supp. at 655.

This Court is satisfied that there is a substantial likelihood of further copyright infringement by the management of "Marilyn's." This dance bar continues to operate without an ASCAP license, utilizes numerous disc-jockeys and live performers who independently select the music to be played at "Marilyn's," and does not maintain any policy which is designed to control its musical [*570] scores. Moreover, despite three years of warnings by ASCAP, IML permitted the copyright infringements to take place at "Marilyn's." Under such circumstances, this Court is convinced that the issuance of an injunction which will prohibit the Defendants from utilizing any musical composition in ASCAP'S repertoire without authorization is appropriate.

c. Statutory Damages

Under the Copyright Act, a copyright owner may recover an award of statutory damages "in a sum of [**12] not less than $ 500 or more than $ 20,000 as the court considers just . . . ." for each infringement. 17 U.S.C. § 504 (c)(1). This rule is also designed to discourage wrongful conduct. F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233, 97 L. Ed. 276, 73 S. Ct. 222 (1952).

In determining statutory damages, courts are urged to consider two main factors; namely, (1) the expenses saved and profits reaped by the Defendants in connection with the infringement - also expressed as the deterrent value of the award - and (2) the willfulness of the infringement. See, e.g., Marvin Music Co., 830 F. Supp. at 656; Boz Scaggs Music v. KND Corp., 491 F. Supp. 908, 914 (D. Conn. 1980).

In the present case, the Plaintiffs seek an award of $ 2,000 per infringement. [7] In support of their request, they have provided this Court with a survey of statutory awards throughout the country, all of which indicate that the courts typically award three times the amount of a properly purchased license for each infringement. [8] Typically, [**13] these "treble" damages range from $ 1,500 to $ 5,000 per infringement. See, e.g., Coleman v. Payne, 698 F. Supp. 704, 709 (W.D. Mich. 1988) ($ 5,000 per infringement); Brockman Music v. Miller, 1990 Copyright Law Decisions (CCH) P 26,602 ($ 1,500 per infringement); Panther Music Corp. v. York-Oxbow Enterprises, Inc., Case No. 93-CV-72043-DT (E.D. Mich. January 31, 1994) ($ 2,500 per infringement).

This Court finds that the requested statutory damages of $ 2,000 per infringement is adequate inasmuch as the record makes it clear that the copyright [**14] violations resulted from the deliberate indifference of the "Marilyn's" management toward the copyright laws. In addition, the requested statutory damages are in line with the prevailing case law of awarding more than the value of ASCAP's license fees. Moreover, the requested relief properly accounts for the expenses that were "saved" by the Defendants (e.g., the license fee), while leaving an adequate margin to account for the profits reaped by them in connection with the unauthorized use of copyrighted music and to

---

[7] In 1993, Marilyn's would have had to pay $ 602 for an ASCAP license. Thus, the requested relief of $ 2,000 per infringement adequately approximates three times that amount.

[8] The purpose of this de facto treble rule is to put defendants "on notice that it costs less to obey the copyright laws than to violate them." Music City Music v. Alfa Foods, Ltd. 616 F. Supp. 1001, 1003 (E.D. Va. 1985).

serve the deterrence purpose of the Copyright Act.

d. *Costs and Attorney's Fees*

The Copyright Act grants courts the discretion to award costs and attorney's fees to the prevailing party in a copyright infringement action. *17 U.S.C. § 505*. In determining whether an award of costs and attorney's [***1311] fees is warranted, courts may consider whether (1) a complex or novel issue of law justified the litigation of the case, (2) the defendants attempted to avoid the infringement, and (3) the act of infringement was innocent. *Boz Scaggs Music, 491 F. Supp. 908*.

In the instant cause, none of these factors weigh in [**15] favor of the Defendants. Their infringement was blatant. The Defendants, despite having had prior experience in dealing with ASCAP, simply chose to disregard the Plaintiffs' rights to the copyrighted material. Additionally, they refused ASCAP's multiple offers to forego litigation in exchange of their payment of ASCAP's dues. Thus, they have forced the Plaintiffs to engage lawyers, incur legal fees, and resort to the courts to enforce their rights. Significantly, the Defendants have failed to present any facts which mitigate their serious infraction. These circumstances demonstrate that [*571] they have engaged, and will continue to engage, in a pattern of deliberate indifference toward the Plaintiffs' rights. Hence, it is evident to this Court that costs and attorney's fees should be granted.

Based on the foregoing, the Plaintiffs' Motion for Summary Judgment shall be granted. In addition, they are directed to submit a proposed order to the Court, which shall be consistent with this opinion, within a period of ten (10) days from this date.

IT IS SO ORDERED.

Julian Abele Cook, Jr.

Chief Judge

United States District Court

Dated: NOV 10 1994

Detroit,                                    Michigan

**Table1** (*Return to related document text*)

**Table1** (*Return to related document text*)

End of Document