# EXHIBIT K

Last updated December 11, 2018  01:58:08 pm GMT

# *In re BitTorrent Adult Film Copyright Infringement Cases*

United States District Court for the Eastern District of New York

May 1, 2012, Decided; May 1, 2012, Filed

Civil Action Nos. 11-3995(DRH)(GRB); 12-1147(JS)(GRB); 12-1150(LDW)(GRB); 12-1154(ADS)(GRB)

**Reporter**
296 F.R.D. 80 *; 2012 U.S. Dist. LEXIS 61447 **; 2012 WL 1570765

IN RE: BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES

**Subsequent History:** Later proceeding at *Malibu Media, LLC v. Doe, 2012 U.S. Dist. LEXIS 189914 (E.D.N.Y., July 24, 2012)*

Adopted by, Objection overruled by, Dismissed by, in part *Patrick Collins, Inc. v. Doe, 288 F.R.D. 233, 2012 U.S. Dist. LEXIS 165764 (E.D.N.Y., 2012)*

## Case Summary

### Overview
Due to the popularity of wireless routers, it was not likely that the subscriber to an Internet Protocol address carried out a purported illegal downloading of a single pornographic film. While the discovery propounded by plaintiffs was specific, it did not establish a reasonable likelihood it would have lead to the identity of defendants who could have been sued. There were clear indicia that counsel for one copyright owner had employed abusive litigations tactics to extract settlements. Principles of fundamental fairness and judicial economy dictated that permissive joinder not be allowed.

### Outcome
The motions for leave to serve third-party subpoenas was granted in part and denied in part. It was recommended that the complaints be dismissed in part.

**Counsel:** [**1] For Plaintiff (1-37, CV 11-3995 (DRH)(GRB)): Frederic R. Abramson, Esq., New York, New York.

For John Doe #2, Defendant (1-37, CV 11-3995 (DRH)(GRB)): Joseph P. Augustine, Esq., Augustine & Eberle LLP, New York, New York.

For John Doe #29, Defendant (1-37, CV 11-3995 (DRH)(GRB)): James Rosenzweig, Esq., New York, New York.

For John Doe #35, Defendant (1-37, CV 11-3995 (DRH)(GRB)): James D. Murtha, Esq., Babylon, New York.

For Plaintiffs (1-26, CV 12-1147 (JS) (GRB), 1-11, CV 12-1150 (LDW) (GRB), 1-9, CV 12-1154 (ADS) (GRB)): Jason Aaron Kotzker, Kotzker Law Group, Highlands Ranch, Colorado.

**Judges:** GARY R. BROWN, United States Magistrate Judge.

**Opinion by:** GARY R. BROWN

## Opinion

[*82] **ORDER & REPORT & RECOMMENDATION**

**GARY R. BROWN, United States Magistrate Judge:**

These actions are part of a nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals utilizing a computer protocol known as BitTorrent. The putative defendants are identified only by Internet Protocol ("IP") addresses. These four civil actions involve more than 80 John Doe defendants; these same plaintiffs have filed another nineteen cases in this district involving more than thrice that number of [**2] defendants.[1] One media outlet reports that more than 220,000 individuals have been sued since mid-2010 in mass BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works.[2]

This Order addresses (1) applications by plaintiffs in three of these actions for immediate discovery, consisting of Rule 45 subpoenas directed at non-party Internet Service Providers ("ISPs") to obtain identifying information about subscribers to the named IP addresses and (2) motions [**3] to quash similar subpoenas by several putative John Doe defendants in the remaining action. For the reasons that follow, including evidence of abusive litigation tactics by plaintiffs, the plaintiffs' applications for service of subpoenas are granted only as to John Doe 1 in each case under terms and conditions set forth herein, and denied in all other respects. The motions to quash are granted because the work in that action is not subject of a copyright registration.

Furthermore, it is respectfully recommended to the respective district judges that (1) as to three of the actions, the matters be dismissed without prejudice as to all defendants other than John Doe 1; (2) that the fourth action be dismissed without prejudice; and (3) that these plaintiffs and their counsel be directed that all future actions be filed only against a single defendant.

## BACKGROUND

### 1. Allegations in the Complaints

The four complaints that are subject to this Order are nearly identical, though each involves a different pornographic film, to wit: *Gang Bang Virgins*, *Veronica Wet Orgasm*, *Maryjane Young Love* and *Gangbanged*. See *K-Beech, Inc. v. Does 1-37*, CV 11-3995 [*83] (DRH)(GRB) (hereinafter "*K-Beech*"); *Malibu Media* [**4] *LLC v. Does 1-26*, CV 12-1147(JS)(GRB) (hereinafter "*Malibu 26*"); *Malibu Media LLC v. Does 1-11*, CV 12-1150 (LDW)(GRB) (hereinafter "*Malibu 11*"); and *Patrick Collins, Inc. v. Does 1-9*, CV 12-1154 (ADS)(GRB) (hereinafter "*Patrick Collins*"). In three of the cases, plaintiff claims to be the owner of a copyright registered for the work in question. See, e.g., *Malibu 26*, Complaint at ¶¶11-13, Docket Entry ("DE") [1]. In *K-Beech*, plaintiff claims only that an application for copyright has been submitted as to its work *Gang Bang Virgins*. *K-Beech*, Am. Compl. at ¶¶11-12, DE [18]. Each defendant is identified only by an IP address purportedly corresponding to a physical address in this district, defined in the complaint as "a number that is assigned by an ISP to devices, such as

---

[1] See *Patrick Collins, Inc. v. Does 1-7*, CV 11-1270 (JG) (RER) (80 defendants in consolidated case); *K-Beech, Inc. v. Does 1-29*, CV 11-3331 (JFB) (ETB); *K-Beech, Inc. v. Does 1-37*, CV 11-3741 (LDW) (AKT); *K-Beech, Inc. v. Does 1-52*, CV 11-3994 (JFB) (ETB); *Patrick Collins, Inc. & K-Beech, Inc. v. Doe*, CV 11-4094 (JFB) (GRB); *Malibu Media, LLC v. Does 1-10*, CV 12-1146 (JS) (ETB); *Malibu Media, LLC v. Does 1-20*, CV 12-1148 (ADS) (AKT); *Malibu Media, LLC v. Does 1-30*, CV 12-1149 (LDW) (AKT); *Patrick Collins, Inc. v. Does 1-11*, CV 12-1153 (JFB) (ARL); *Malibu Media, LLC v. Does 1-13*, CV 12-1156 (JFB) (ETB).

[2] See http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk.

computers, that are connected to the Internet." *Malibu 26*, Compl. at ¶8. The Complaints further allege that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." *Id.* at ¶9.

The complaints describe, in some detail, a peer-to-peer filing sharing protocol known as BitTorrent which is a means by which devices connected to the Internet can share large computer [**5] files (such as digital copies of movies) while minimizing the strain on computer networks. *See, e.g., Malibu 26*, Compl. at ¶¶14-15. BitTorrent works by breaking files into many smaller files "to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), [and] allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)." *Id.* at ¶15. BitTorrent also uses a "tracker" computer that tracks the pieces of the files as those pieces are shared among various computers. This tracking feature the plaintiffs to identify the IP addresses from which the films were downloaded, the subscribers to which have become the defendants in these actions. *Id.* ¶¶24-26.

### 2. Plaintiffs' Motions for Early Discovery

Plaintiffs in *Malibu 26, Malibu 11,* and *Patrick Collins* have filed motions for leave to file non-party subpoenas prior to a Rule 26(f) conference, seeking to serve subpoenas upon the ISPs to identify the subscribers to the subject IP addresses. Specifically, these subpoenas seek the "true name, address, telephone number, e-mail [**6] address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address." *See, e.g., Malibu 26*, Proposed Order, DE [3-2].

### 3. Motions to Quash

By order dated September 16, 2011, the Honorable A. Kathleen Tomlinson granted a nearly identical motion for early discovery in *K-Beech. See K-Beech*, Order of 9/16/11, DE [6]. However, to protect the rights of all parties, Magistrate Judge Tomlinson established a procedure by which both the ISPs and the John Does were afforded an opportunity to move to quash before the information was provided to K-Beech. The procedure Magistrate Tomlinson implemented elicited information that not only permits reasoned review of the motions to quash, but also provides insight into the pending motions for early discovery.

A total of six putative John Doe defendants moved to quash, *see K-Beech*, Motions, DE [7], [13], [14], [16], [17], & [34], while a seventh had counsel appear without filing a motion. Several motions include fact based arguments which are highly individual to each moving party, as well as legal arguments. One argument common to all of these motions arises from the fact that, according to the allegations, K-Beech does [**7] not have a registered copyright to *Gang Bang Virgins*, but premises its action on a copyright application. K-Beech has amended its complaint to include trademark allegations, but, notably, has not alleged the receipt of a copyright registration. As detailed below, the registration argument is a sufficient basis to grant the motions to quash, though not the sole basis.

### 4. Additional Facts

#### a. Factual Defenses Raised by the Moving John Doe Defendants

The factual defenses presented are vastly different and highly individualized. One [*84] movant — John Doe #16 — has stated that he was at work at the time of the alleged download. John Doe #2 states under oath that he closed the subject Earthlink account, which had been compromised by a hacker, before the alleged download. *K-Beech*, Decl. of John Doe #2, ¶5, DE [34-1]. John Doe #29's counsel represents that his client is an octogenarian with neither the wherewithal nor the interest in using BitTorrent to download *Gang Bang Virgins*. DE [13]. John Doe #10 represents that downloading a copy of this film is contrary to her "religious, moral, ethical and personal views." Mtn ¶5, DE [7]. Equally important, she notes that her wireless router was not secured [**8] and she lives near a municipal parking lot, thus providing access to countless neighbors and passersby.[3] *Id.* at ¶4

### b. The Use of IP Address to Identify the Alleged Infringers

The complaints assert that the defendants — identified only by IP address — were the individuals who downloaded the subject "work" and participated in the BitTorrent swarm. However, the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. As one introductory guide states:

If you only connect one computer to the Internet, that computer can use the address from your ISP. Many homes today, [**9] though, use routers to share a single Internet connection between multiple computers. Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms. If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.[4]

Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function — here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call.

Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access.[5] Several of the ISPs at issue in this case provide a complimentary wireless router as part of Internet service. As a result, a single IP address usually supports multiple computer devices — which unlike traditional telephones [**10] can be operated simultaneously by different individuals. *See U.S. v. Latham, 2007 U.S. Dist. LEXIS 94264, 2007 WL 4563459, at *4 (D.Nev. Dec. 18, 2007)*. Different family members, or even visitors, could have performed the alleged downloads. Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors

---

[3] While Plaintiffs claim that they can amend their complaints to allege negligence against the owner of a WiFi router who failed to password-protect the device which was then used by an intruder to infringe its copyright, *see* K-Beech Mem. in Opp. at 24, DE [10], this assertion flies in the face of common sense.

[4] *See* "What is an IP address?" available at http://computer.howstuffworks.com/internet/basics/question5492.htm.

[5] Lardinois, F,. "Study: 61% of US Households Now Have WiFi," available at *http://techcrunch.com*, 4/5/12.

or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:

> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router signal **[*85]** strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass **[**11]** this security using publicly available software.

2007 U.S. Dist. LEXIS 94264, [WL] at *4. Some of these IP addresses could belong to businesses or entities which provide access to its employees, customers and sometimes (such as is common in libraries or coffee shops) members of the public.

These developments cast doubt on plaintiffs' assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." see, e.g., Malibu 26, Compl. at ¶9, or that the subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts. As one judge observed:

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; **Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material**. Counsel stated that the true offender is often the "teenaged **[**12]** son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2."

Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 229, 2012 U.S. Dist. LEXIS 10803, 2012 WL 263491, at *3 (S.D.N.Y. 2012) (citations omitted and emphasis added). Another court noted:

> the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes . . . By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.

SBO Pictures, Inc. v. Does 1-3036, 2011 U.S. Dist. LEXIS 137361, 2011 WL 6002620, at *3 (N.D.Cal. Nov. 30, 2011) **[**13]** (citations

Case 1:18-cv-00079-EJL   Document 27-14   Filed 01/25/19   Page 7 of 17 Page 76 of 16

296 F.R.D. 80, *85; 2012 U.S. Dist. LEXIS 61447, **13

omitted).

In sum, although the complaints state that IP addresses are assigned to "devices" and thus by discovering the individual associated with that IP address will reveal "defendants' true identity," this is unlikely to be the case. Most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.

### c. Indicia of Unfair Litigation Tactics

One moving defendant has provided concrete evidence of improper litigation tactics employed by K-Beech. In a sworn declaration, John Doe #16 states the following:

> Upon receipt of the Complaint, I reached out to Plaintiff and spoke to a self-described "Negotiator" in an effort to see if I could prove to them (without the need for publicly tying my name to the Complaint) that I had nothing to do with the alleged copyright infringements. **The Negotiator was offered unfettered access to my computer, my employment records, and any other discovery they may need to show that I was not the culpable party**. Instead, the [**14] Negotiator refused and was only willing to settle the Complaint for thousands of dollars. While the Negotiator said on October 24, 2011 that he would check to see if he could come down from the thousands of dollar settlement amount, the Negotiator has not responded to two voice mails that were left on October 25, 2011. Notably, the Negotiator justified the settlement amount because, in part, I would incur legal fees in hiring an attorney.

[*86] K-Beech, Decl. of John Doe #16, at 11-12 , DE [16] (emphasis added). Significantly, since plaintiff has not yet been provided with the identities of the moving John Does, this record exists only because John Doe #16 proactively contacted counsel for K-Beech (who is also representing Patrick Collins, Inc. in another matter), rather than await a determination by the Court. John Doe #16's experience directly mirrors that of defendants in a separate action by plaintiff K-Beech regarding *Gang Bang Virgins*, as well as another action filed by Patrick Collins, Inc. relating to a film entitled Cuties. See *K-Beech, Inc. v. Does 1-85, 2011 U.S. Dist. LEXIS 124581, at *6 (E.D.Va. Oct. 5, 2011)* ("Some defendants have indicated that the plaintiff has contacted them [**15] directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation") and *Patrick Collins, Inc. v. Does 1-58, 2011 U.S. Dist. LEXIS 120235, at *6 (E.D.Va. Oct. 5, 2011)* (same); cf. *Raw Films, Ltd. v. Does 1-32, 2011 U.S. Dist. LEXIS 114996, 2011 WL 6182025, at *2 (E.D.Va. Oct. 5, 2011)*(same).[6]

Remarkably, plaintiff's opposition to John Doe #16's motion, encompassing 62 pages of material,[7] does not provide any evidentiary

---

[6] In these cases, counsel for K-Beech and Patrick Collins, Inc. was directed to show cause why Rule 11 sanctions should not be imposed for this conduct, but ultimately sanctions were not imposed.

[7] Plaintiff K-Beech's rambling motion papers often lapse into the farcical. In its papers, counsel for K-Beech equate its difficulties with alleged piracy of its adult films with those faced by the producers of the Harry Potter books, Beatles songs and Microsoft software, and compare its efforts to collect from alleged infringers of its rights to the efforts of the FBI to combat child pornography. Mem. in Opp. at 4, 10, DE [22]. In an ironic turn, the purveyors of such works as *Gang Bang Virgins*, explain how its efforts in this matter will help empower parents to prevent minors from watching "movies that are not age appropriate" by ensuring that viewers must pay for plaintiffs products, and thereby effectively notify parents of such activity because "many parents would surely notice if they showed up on billing statements." *Id.* at 7-8. It is difficult to accord the plaintiff, which [**17] features "Teen" pornography on its website, the moral high-ground in this

response to these sworn assertions of improper conduct. Rather, counsel attempts to dismiss this evidence as "mere denials", and unabashedly argues that "[d]efendant's] assertion that the negotiations between him and Plaintiff have ended further supports the need for litigation." Pl's. Mem. In Opp. at 24, DE [22]. Moreover, K-Beech has filed "Notices of Settlement and Voluntary Dismissal" as to three of the John Does in this action. See DE [30], [31] and [38]. "This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain [**16] the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does." *Raw Films, 2011 U.S. Dist. LEXIS 114996, 2011 WL 6182025, at \*2*.

In a similar case by plaintiff Patrick Collins filed in this district, after being granted discovery of the IP subscribers, counsel for that entity described in motion papers the intended approach to the John Doe defendants:

> Plaintiff requested and was granted additional time within which to effectuate service upon the Doe Defendants to accommodate Plaintiff's need for obtaining their identifying information, as well as its further settlement and litigation strategy. The latter involves Plaintiff contacting Doe Defendants once their identities are known and attempting to reach a settlement with them. In cases where a settlement cannot be reached, Plaintiff would then consider the feasibility of filing suit, and proceed with service upon those Doe Defendants against whom it chooses to proceed.

*Patrick Collins, Inc. v. Does 1-7*, [**18] CV 11-1270 (JG)(RER), Mtn, DE [22], at ¶ 6. On a cold record, this overview could be viewed as a reasoned approach. However, when viewed against undisputed experience of John Doe #16, described above, and findings by other courts, this suggests an approach that is highly inappropriate.

## DISCUSSION

### The Legal Standard

*Federal Rule of Civil Procedure 26(d)(1)* forbids a party from seeking discovery [*87] "from any source before the parties have conferred as required by *Rule 26(f)* except as "authorized ... by court order." *Fed. R. Civ. P. 26(d) (1)*. This is generally viewed as requiring a showing of good cause. See, e.g., *Ayyash v. Bank Al—Madina, 233 F.R.D. 325, 326 (S.D.N.Y. 2005)*. Plaintiffs rely principally upon the five factor *Sony Music* test, adopted by the Second Circuit, which requires the Court to weigh:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy.

*Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010)* [**19] (citing *Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004))*. This test, articulated in the context of evaluating a motion to quash, frames the inquiry in evaluating defendants' motions in *K-Beech*. Additionally, plaintiffs correctly note that the test is also instructive in evaluating the motions for early discovery.

regard.

**Element 1: Prima Facie Claim of Actionable Harm**

Plaintiffs Malibu and Patrick Collins have set forth *prima facie* claims of actionable harm by alleging ownership of registered, copyrighted works that have been infringed.[8]

The situation with K-Beech is far different. K-Beech does not allege that it has a copyright registration; rather, it bases its complaint on a copyright application. In another case in this district, K-Beech v. Doe, CV 11-3331, 2010 U.S. Dist. LEXIS 143728, Magistrate Judge Boyle denied [**20] K-Beech the precise relief sought in the instant application based on a failure to allege that its copyright in the work in that case — *Virgins 4* — had been registered. Judge Boyle found:

> Section 411(a) of the Copyright Act "requires copyright holders to register their works before suing for copyright infringement." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237, 1241, 176 L. Ed. 2d 18 (2010) (citing 17 U.S.C.A. § 411(a)). While failure to register a work does not deprive a federal court of jurisdiction over an action for infringement, valid registration is an element of an infringement claim. Although the Second Circuit has not addressed this specific question, courts in both the Eastern District of New York and the Southern District of New York have held that submission of an application for copyright registration does not satisfy the registration precondition of § 411(a).

Order of 9/19/11 at 2-3 (additional quotations and citations omitted), DE [10]. Judge Boyle denied the requested discovery, and K-Beech voluntarily dismissed the case. See DE [12]. I agree with Judge Boyle and find that K-Beech has not met its burden on this factor.

K-Beech attempted to remedy this [**21] deficiency by adding conclusory trademark claims to its amended complaint. The complaint fails to explain in what ways the illegal downloading and uploading alleged could possibly cause confusion among consumers, or "hamper efforts by Plaintiff to protect its reputation" with "the purchasing public in New York."[9] Am. Compl. ¶¶64-67, DE [18]. [*88] K-Beech's citation to *dicta* in the Supreme Court's decision in *Dastar* is unavailing, as that case's holding undercuts plaintiff's attempt to extend trademark protection to these facts. Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 34, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003) ("in construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by copyright" (citation omitted)). Even viewed in the most favorable light, the trademark allegations fail to state a claim.

---

[8] For the purposes of this analysis, it is assumed that plaintiffs' works are entitled to copyright protection, though that may be an open question. See Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 447 n.2 (D.Mass. 2011) (it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement").

[9] As K-Beech put its reputation into issue, it is worth noting that the owner of K-Beech Inc. (and the apparent inspiration for the K-Beech mark) is Kevin Beechum. See "Porn studios raided to ensure adult-only casts," 1/12/07, LA Times at 1. It appears that this is the same Kevin Beechum who testified in federal [**22] prosecutions about his experience vandalizing retail adult video stores to help extort protection payments from their owners. See U.S. v. Feinberg, 89 F.3d 333, 335 (7th Cir. 1996); U.S. v. Sturman, 49 F.3d 1275, 1278 (7th Cir. 1995). In those cases, Beechum described how he hired associates to use hammers and baseball bats to inflict $10,000 in damage on a Phoenix adult shop, and negotiated over a "few more jobs" in Cleveland. Other evidence established that, following Beechum's introduction, these same associates, on behalf of the extortionists, planned to plant remote control bombs at eight stores in Chicago in furtherance of the scheme, but that plan failed when, after successfully attacking one store, a bomb accidentally went off, killing one of the coconspirators.

### Elements 2: The Specificity of the Discovery Requests

With respect to the specificity of discovery requests, the *Sony Music* court explained that this factor requires that "Plaintiffs' discovery request is also sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal [**23] court." *Sony Music, 326 F. Supp. 2d at 566*. While the discovery propounded by plaintiffs is specific, for the reasons discussed above, it does not establish a reasonable likelihood it will lead to the identity of defendants who could be sued. See *Pacific Century Int'l Ltd. v. Does, 2011 U.S. Dist. LEXIS 124518, 2011 WL 5117424, at *2 (N.D.Cal. Oct. 27, 2011)* ("Plaintiff must go beyond the 'limited discovery' that it earlier asserted would lead to Defendants' identities . . . [p]resumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing his internet access, would be fair game. Beyond such an inspection, [the plaintiff] might require still more discovery, including interrogatories, document requests and even depositions." (citations omitted; alterations in original)).

In this regard, the instant matter is factually distinguishable from the *Arista Records* decision. In that case, the sought after discovery involved an Internet service provider located at a university. Based on that setting, and at that time, it was almost certain that the end user at an IP address was a particular individual, rather than a wireless network. [**24] The instant case involves broadband Internet service in a largely residential suburban area at a time when wireless is widely available. Furthermore, it is alleged that each John Doe in the instant case downloaded only a single pornographic film. By contrast, in *Arista Records*, the plaintiff alleged that a file sharing folder located at the IP address in question contained 236 audio files, containing at least a half-dozen copyrighted songs owned by the plaintiff. *Arista Records, 604 F.3d at 122*. In fact, in that case, plaintiffs' investigator was able to "download[] music files from the user's computer," which is not the case here. *Arista Records LLC v. Does 1-16, 2009 U.S. Dist. LEXIS 12159, 2009 WL 414060, at *1 (N.D.N.Y. Feb. 18, 2009) aff'd 604 F.3d 110 (2d Cir. 2010)*. Clearly, the level of activity in *Arista Records* made it far more likely that the subscriber to the IP address would have conducted or at least been aware of the illegal downloading. In sum, it is not clear that plaintiffs have satisfied this factor.

### Element 3: The Absence of Alternative Means

As one court observed, "[b]ecause the transactions in question occurred online, the defendants have been elusive and the IP addresses and ISP are the only [**25] available identifying information. Without the requested discovery, there are no other measures Plaintiff can take to identify the personal information for the Doe defendants." *Raw Films, Ltd. v. Does 1-11, 2012 U.S. Dist. LEXIS 28161, 2012 WL 684763, at *2 (S.D. Cal. Mar. 2, 2012)*. Plaintiffs retained a company that provides forensic investigation services including the identification of IP addresses using BitTorrent protocol. See Fieser Decl. ¶¶5-6, DE [3-3]. Since plaintiffs have only been able to identify IP addresses used for potential infringement, they have established to the satisfaction of the Court that there are not alternative means available to identify the alleged infringers.

[*89] ### Element 4: The Need for Subpoenaed

### Information to Advance the Claim

Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims. However, not all the information sought is required to advance the claim. For example, in addition to names and addresses, plaintiffs seek both the home telephone numbers and email addresses of the putative John Does, see Malibu 26, Proposed Order DE [3-2], information which is clearly not required to proceed with this action. In particular, [**26] obtaining the home telephone numbers seems calculated to further plaintiffs' settlement strategies, discussed above, rather than advancing their claims by allowing them to effect service.

### Element 5: Defendants' Expectation of Privacy

In Arista Records, the John Doe defendant, conceding that he had engaged in the alleged improper downloading, sought to quash the subpoena on First Amendment grounds. While recognizing the protected nature of anonymous speech, the Court rejected the challenge, concluding that the "First Amendment does not . . . provide a license for copyright infringement." Arista Records, 604 F.3d at 118. In examining this factor, the Sony Music court noted "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission." Sony Music, 326 F. Supp. 2d at 566-67. Here it is uncertain — indeed, it may be unlikely — that the subscribers sought to be identified downloaded the plaintiffs' copyrighted works. Cf. Pacific Century, 2011 U.S. Dist. LEXIS 124518, 2011 WL 5117424, at *2 (denying discovery to protect "innocent internet users"). Thus, this Court cannot conclude with any reasonable certainty that plaintiffs have overcome the expectation of privacy [**27] by putative defendants.

### Abusive Litigation Tactics Employed by the Plaintiffs

The most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants. Indeed, this may be the principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves. See, e.g., K-Beech, Pl. Mem. in Opp. at 3, DE [22] (arguing that this decision "will affect the rights of intellectual property holders across all segments of society"). While not formally one of the Sony Music factors, these facts could be viewed as a heightened basis for protecting the privacy of the putative defendants, or simply grounds to deny the requested discovery on the basis of fundamental fairness.

In an effort to defend its litigation approach, K-Beech argues that "Fed.R.Civ.P. 1 requires that Courts construe the rules to secure the inexpensive determination of every action." Pl. Mem. in Opp. at 11, DE [22]. This Court takes the mandate of Rule 1 quite [**28] seriously, and vigorously encourages efforts by litigants to reduce litigation costs through settlement. See In re Tobacco Litig., 192 F.R.D. 90, 95 (E.D.N.Y. 2000) (describing court's "duty to take affirmative action assisting the parties in all possible settlement options"). However, in its argument, plaintiff neglects to observe that Rule 1 requires that disputes should be resolved in a manner that is "**just**, speedy and inexpensive." Fed. R. Civ. P. 1 (emphasis added). In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that

he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive (for the plaintiff). Cf. On The Cheap, LLC v. Does 1-5011, 280 F.R.D. 500, 2011 U.S. Dist. LEXIS 99831, 2011 WL 4018258, at *4 (N.D.Cal. Sept. 6, 2011) ("plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create . . . management and logistical problems . . . and then offer to settle with Doe defendants so that they [**29] can avoid digging themselves out of the morass plaintiff is creating").

Our federal court system provides litigants with some of the finest tools available to [*90] assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." Patrick Collins, Inc. v. Does 1—3757, 2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

Given the unopposed, sworn account by John Doe #16, which dovetails with the experience of defendants in other actions brought by K-Beech and Patrick Collins, I find counsel for K-Beech has already engaged in improper litigation tactics in this matter, and find it highly probable that Patrick Collins Inc. and Malibu will likely engage in similar tactics if permitted to proceed with these mass litigations. Such conduct cannot be condoned by this Court. This is a persuasive basis to deny the motions for early discovery, as well as an additional basis [**30] to grant the motions to quash. See Pacific Century, 2011 U.S. Dist. LEXIS 124518, 2011 WL 5117424, at *2 (denying discovery on this basis).

It would be unrealistic to ignore the nature of plaintiffs' allegations — to wit: the theft of pornographic films — which distinguish these cases from garden variety copyright actions. Concern with being publicly charged with downloading pornographic films is, understandably, a common theme among the moving defendants. As one woman noted in K-Beech, "having my name or identifying or personal information further associated with the work is embarrassing, damaging to my reputation in the community at large and in my religious community." Mtn to Quash, ¶5, DE [7]. Many courts evaluating similar cases have shared this concern. See, e.g., Pacific Century Int'l, Ltd. v. Does 1-37, 282 F.R.D. 189, 2012 U.S. Dist. LEXIS 44368, 2012 WL 1072312, at *3 (N.D. Ill. Mar. 30, 2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle"); Digital Sin, 2012 U.S. Dist. LEXIS 10803, 2012 WL 263491, at *3 ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement") [**31] SBO Pictures, 2011 U.S. Dist. LEXIS 137361, 2011 WL 6002620, at *3 (defendants "whether guilty of copyright infringement or not-would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'" ). This consideration is not present in infringement actions involving, for example, popular music downloads. See Arista Records, 604 F.3d at 122, ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music . . . The swappers . . . are ignorant or more commonly disdainful of copyright." (quoting In re Aimster Copyright Litig., 334 F.3d 643, 645 (7th Cir.

2003))).

The Federal Rules direct the Court to deny discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Fed. R. Civ. P. 26(c)(1)*. This situation cries out for such relief.

### Joinder is Inappropriate

In opposing the motions to quash, K-Beech relies heavily on the "swarm joinder" theory championed by plaintiffs here and elsewhere. *Rule 20* governs the permissive joinder of parties and [**32] states that defendants may be joined in one action where a plaintiff states a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." *Fed. R. Civ. P. 20 (a) (2) (A)* & *(B)*. The argument is that every user who participates in the "swarm" is acting in concert to violate plaintiffs' copyrights.

Highly questionable factual assumptions underlie plaintiffs' contention that these cases satisfy the *Rule 20* requisites for joinder. By way of example, Plaintiffs assert that the John Does were "acting in concert with each other," "working together", and "directly interacted and communicated with other members of that swarm." *See, e.g., Malibu 26*, Compl. ¶¶ 10, 33, 34. Much of the BitTorrent protocol operates invisibly to the user — after downloading a file, subsequent [*91] uploading takes place automatically if the user fails to close the program. Exhibit D to the complaints, which allegedly documents the "interactions" between defendants, is a page of machine instructions which clearly demonstrate that the user plays no role in these interactions. Indeed, "[t]he bare [**33] fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011)*.

Moreover, the dates of downloading provided in the complaints — which are often weeks or months apart -- further undermine the allegation that all of the John Does were part of a single swarm. Thus, *even assuming that the John Does are the actual infringers*, the assertion that defendants were acting in concert rests upon a thin reed. See generally *Raw Films, Ltd. v. Does 1-32, 2011 U.S. Dist. LEXIS 149215, 2011 WL 6840590, at *2 (N.D.Ga. Dec. 29, 2011)* (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32, 2011 U.S. Dist. LEXIS 114996, 2011 WL 6182025 at *2 (E.D.Va. 2011)* (conduct over a three month time span was "insufficient to meet the standards of joinder set forth in *Rule 20*"). I find that plaintiffs have not satisfied the requirement of establishing that defendants participated in the same "transaction" or "occurrence" [**34] within the meaning of *Rule 20*.

Alternatively, because joinder is permissive, this Court retains the discretion to sever under *Rules 20(b)*, *21*, and *42 (b)*. See *Third Degree Films v. Does 1-131, 280 F.R.D. 493, 2012 U.S. Dist. LEXIS 26617, 2012 WL 692993, at *3 (D. Ariz. Mar. 1, 2012)*. In determining whether to exercise that discretion, the court should "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *On the Cheap, 2011 U.S. Dist. LEXIS 99831, 2011 WL 4018258, at *2* (quoting *Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000))*. "Courts may

Case 1:18-cv-00079-EJL   Document 27-14   Filed 01/25/19   Page 14 of 17 Page 13 of 16

296 F.R.D. 80, *91; 2012 U.S. Dist. LEXIS 61447, **34

also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." SBO Pictures, 2011 U.S. Dist. 137361, 2011 WL 6002620, at *3.

Plaintiffs identify two common questions of fact in these actions: the plaintiffs' ownership of copyrights, and the workings of BitTorrent. By contrast, the half-dozen moving defendants, even at this preliminary stage, have raised a panoply of individual defenses, including age, religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of WiFi equipment and security software [**35] utilized; and the location of defendant's router. The individualized determinations required far outweigh the common questions in terms of discovery, evidence, and effort required. Thus, swarm joinder complicates these actions, resulting in waste of judicial resources.

Plaintiffs tout the fact that "joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in forty reported opinions and has been permitted in district courts across the country." K-Beech, Mem. in Opp. at 1, DE [25]. However, due to plaintiffs' litigation strategy, which includes avoiding review on the merits except at a preliminary, ex parte stage, these determinations were made without any factual record by judges unaware of the highly individualized, fact specific defenses raised on the motions to quash, or evidence of strong-arm tactics, both of which strongly militate against allowing joinder in these mass actions.

On this issue, one court has observed:

> In addition to the Rule 20(a)(2) criteria, the court has a parallel duty to ensure that permissive joinder "would comport with the principles of fundamental fairness or would [not] result in prejudice to either side. The court also has discretion [**36] to sever an action when joinder would confuse and complicate the issues for all parties involved. It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial . . . would be inefficient, chaotic, and expensive. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural [*92] albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal. Similarly, pro se Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost. The court cannot permit a case to proceed in this manner.

Pacific Century, 2011 U.S. Dist. LEXIS 124518, 2011 WL 5117424, at *3 (quotations and citations omitted). As such, I find that principles of fundamental fairness and judicial economy dictate that permissive joinder not be allowed in [**37] these cases.

## By Pursuing Mass Actions, Plaintiffs Improperly Avoid Payment of Filing Fees

The payment of court filing fees is mandated by statute. Specifically, the "district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350." 28 U.S.C. §1914(a). Of that amount, "$190 shall be deposited into a special fund of the Treasury to be available to offset funds appropriated for the operation and

Case 1:18-cv-00079-EJL   Document 27-14   Filed 01/25/19   Page 15 of 17 Page 14 of 16

296 F.R.D. 80, *92; 2012 U.S. Dist. LEXIS 61447, **37

maintenance of the courts of the United States." *28 U.S.C. §1931(a)*.

In multidistrict cases considering severance of cases, courts have noted that the filing fee has:

> two salutory purposes. First, it is a revenue raising measure. . . Second, *§1914(a)* acts as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits. Had each plaintiff initially instituted a separate lawsuit as should have occurred here, a fee would have been collected for each one. . . . Thus, the federal fisc and more particularly the federal courts are being wrongfully deprived of their due. By misjoining claims, a lawyer or party need not balance the payment of the **[**38]** filing fee against the merits of the claim or claims.

*In re Diet Drugs, 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004)*; see also *In re Seroquel Prods. Liability Litig., 2007 U.S. Dist. LEXIS 17603, 2007 WL 737589, at *2-3 (M.D. Fla. Mar. 7, 2007)* (denying reduction of filing fees, noting the burden on the court and the "gatekeeping feature of a filing fee").

Several courts in similar cases involving BitTorrent protocol have also recognized the effect of a countenancing a single filing fee. One court described the "common are of the plaintiffs' litigating tactics" in these cases:

> ...these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficacy is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*Pacific Century, 2012 U.S. Dist. LEXIS 44368, 2012 WL 1072312, at *3*. Thus, the plaintiffs file a single case, and pay one filing fee, to limit their expenses as against the amount of settlements they are able to negotiate. Postponing a determination on joinder in these cases "results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs **[**39]** in copyright actions to join (or misjoin) as many doe defendants as possible." *K-Beech, Inc. v. John Does 1-41, 2012 U.S. Dist. LEXIS 31803, 2012 WL 773683, at *5 (S.D. Tex. 2012)*.

In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory. Considering all the cases filed by just these three plaintiffs in this district, more than $100,000 in filing fees have been evaded. If the reported estimates that hundreds of thousands of such defendants have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees.

**CONCLUSION**

Because K-Beech has failed to allege a valid cause of action, and for all the other reasons set forth herein, the motions to **[*93]** quash in *K-Beech*, CV 11-3995, DE [7], [13], [14], [16], [17], [34], are hereby GRANTED.

For all of the reasons set forth herein, the Court is not inclined to grant the broad early discovery sought by Malibu and Patrick Collins. At the same time, these **[**40]** plaintiffs are allegedly the owners of copyrighted works who should not be left without any remedy. Given the record in this case, however, this must be done in a fashion that will ensure that the rights of all parties are adequately protected. Thus, the Court is prepared to grant these plaintiffs limited early

discovery, to wit: the names and addresses (**not** email addresses or phone numbers) of **only** the subscribers designated as John Doe 1 in *Malibu 26, Malibu 11, and Patrick Collins.* Following service of subpoenas, under the terms and conditions set forth below, the identifying information will be provided to plaintiffs at a status conference, with each John Doe 1 present, giving them an opportunity to be heard, to obtain counsel and, if appropriate, request appointment of counsel from this Court's *pro bono* panel.

Plaintiffs' motions for leave to serve third-party subpoenas prior to a *Rule 26(f)* conference, *Malibu 26*, CV 12-1147, DE [3], *Malibu 11*, CV 12-1150, DE [3], and *Patrick Collins*, CV 12-1154, DE [3], are GRANTED ONLY to the following extent:

> (1) Plaintiffs in *Malibu 26, Malibu 11 and Patrick Collins* may serve subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure [**41] on the ISPs to obtain the name, address, and Media Access Control address for each Defendant designated as John Doe 1 in each action to whom the ISP assigned an IP address. Under no circumstances are plaintiffs permitted to seek or obtain the telephone numbers or email addresses of these individuals, or to seek or obtain information about any potential John Doe defendant other than John Doe 1. Plaintiff's counsel is directed to attach a copy of this Order to the subpoena.
>
> (2) Within seven days of service of each subpoena, the ISPs shall reasonably attempt to identify each John Doe 1 and provide him or her with a copy of the subpoena and this Order. If any of the ISPs are unable to determine, to a reasonable degree of technical certainty, the identity of the user of a particular IP address, it shall so notify Plaintiff's counsel.

> (3) The ISPs shall have twenty-one (21) days from the service of the subpoena to move to quash or otherwise object to the subpoena. Each potential defendant shall have fourteen (14) days from receipt of the subpoena from the ISP to move to quash or otherwise object to the subpoena.
>
> (4) Absent any motion to quash or objection, **the ISPs shall produce the information [**42] sought to the Court, not to the Plaintiff** within twenty-one (21) days after notifying each Defendant pursuant to paragraph (2) above. Said submission shall be made *ex parte* and under seal. Said information will be provided to counsel for plaintiffs at a status conference to be scheduled by the Court.
>
> (5) Plaintiff may only use the information disclosed pursuant to the subpoenas for the purpose of protecting and enforcing Plaintiffs' rights as set forth in the Complaint.

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGES

For all of the reasons set forth herein, it is respectfully recommended as follows:

> 1. That the complaints in *Malibu 26, Malibu 11 and Patrick Collins* be dismissed, *sua sponte* and without prejudice, as to all defendants other than the individual designated as John Doe 1 in each action;
>
> 2. That the complaint in *K-Beech* be dismissed, *sua sponte* and without prejudice, in its entirety; and
>
> 3. That plaintiffs and their counsel in all four actions be directed that any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of

judicial resources, and to ensure the [**43] proper payment of filing fees. *See, e.g., DIRECTV, Inc. v. Armellino, 216 F.R.D. 240, 241 (E.D.N.Y. 2003)* (Spatt, J.) ("plaintiff is [*94] advised that all future claims of this nature must be instituted separately against individual defendants"), (*citing CSC Holdings Inc. v. Tack*, CV 00-3555 (E.D.N.Y. June 16, 2000) (Seybert, J.)).

A copy of this Order and Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Any objections to the Report and Recommendation portion must be filed with the Clerk of the Court within 14 days. *See 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a)* and *6(d)*. Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver, 2008 U.S. App. LEXIS 24018, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); Beverly v. Walker, 118 F.3d 900, 902 (2d Cir. 1997); Savoie v. Merchants Bank, 84 F.3d 52, 60 (2d Cir. 1996)*.

Dated: Central Islip, New York

May 1, 2012

/s/ Gary R. Brown

GARY R. BROWN

United States Magistrate Judge