# EXHIBIT L

Last updated December 11, 2018  01:46:33 pm GMT

# Cobbler Nev., LLC v. Anonymous Users of Popcorn Time

United States District Court for the District of Oregon

August 10, 2016, Decided; August 10, 2016, Filed

Case No. 3:15-cv-01550-SB

**Reporter**
2016 U.S. Dist. LEXIS 105333 *; 2016 WL 4238639

COBBLER NEVADA, LLC, Plaintiff, v. ANONYMOUS USERS OF POPCORN TIME: DOES 1-11, Defendants.

**Counsel:** [*1] For Cobbler Nevada, LLC, Plaintiff: Drew P. Taylor, LEAD ATTORNEY, Carl D. Crowell, Crowell Law, Salem, OR.

For Anonymous Users of Popcorn Time, Defendant: D. Olcott Thompson, D. Olcott Thompson PC, Salem, OR.

**Judges:** STACIE F. BECKERMAN, United States Magistrate Judge.

**Opinion by:** STACIE F. BECKERMAN

## Opinion

### OPINION AND ORDER

**BECKERMAN, Magistrate Judge.**

Plaintiff Cobbler Nevada, LLC ("Plaintiff"), filed this action against eleven anonymous users of Popcorn Time software, alleging a claim for copyright infringement under the Copyright Act, *17 U.S.C. §§ 101 et seq.* The Court has jurisdiction over this matter pursuant to *28 U.S.C. §§ 1331* and *1338*. For the reasons that follow, the Court grants Plaintiff's Bill of Costs (ECF No. 53), and denies Plaintiff's motion for attorney fees (ECF No. 51).

### BACKGROUND

Since 2014, Plaintiff's counsel has filed approximately 300 cases in the United States District Court for the District of Oregon, alleging that Doe defendants, initially identified only by their Internet Protocol ("IP") addresses, violated the Copyright Act by downloading movies on the Internet using the "BitTorrent" protocol.[1] BitTorrent is a peer-to-peer file sharing protocol used to distribute data over the Internet.

In most of these BitTorrent copyright cases, the plaintiff is an out-of-state limited liability company ("LLC"), that owns the copyright for the movie for which the LLC is named. For example, in this case, Cobbler Nevada LLC is a Nevada LLC that owns the copyright for the 2015 movie, *The Cobbler*, starring Adam Sandler. (Compl. ¶¶ 4, 6, ECF 1.) A Pacer search indicates that Cobbler Nevada LLC has now filed 67 cases alleging copyright infringement in the District of Oregon, in addition to at least 165 cases in other districts.

On August 16, 2015, Plaintiff filed its complaint in this case, naming eleven anonymous users of Popcorn Time software as Doe defendants,

---

[1] Early cases filed by Plaintiff's counsel joined [*2] many defendants in a single complaint. *See, e.g., Voltage Pictures, LLC v. Does 1-371*, No. 3:13-cv-00295-AA (filed Feb. 19, 2013) (naming 371 Doe defendants). This district has since prohibited swarm joinder in BitTorrent copyright litigation. *See* Standing Order 2016-8.

identified only by their IP address, and alleging that each defendant violated the Copyright Act by downloading *The Cobbler* using Popcorn Time software. Popcorn Time is a software program that facilitates the exchange of movies over the Internet, using the BitTorrent [*3] peer-to-peer file sharing protocol. According to Plaintiff, "Popcorn Time promotes itself and is distributed in a manner that invites the most causal of Internet users to enter the world of online theft and piracy with its ease of use and friendly logos." (Mot. to Expedite 3 (ECF No. 6 ).)

Soon after filing its complaint, Plaintiff filed a motion for ex parte discovery, in an attempt to ascertain the identity of the Doe defendants. (ECF 6.) Specifically, Plaintiff asked the Court for permission to subpoena records from Internet Service Provider Comcast, to identify the subscriber of each IP address. (ECF 6.) The Court granted plaintiff's motion. (ECF 7.)

Over the next two months, Plaintiff filed joint motions with Doe Defendants No. 4, 5, 8, 9, and 10, to approve consent judgments, and the Court approved and entered those consent judgments. Each consent judgment referenced a separate settlement agreement Plaintiff had reached with the Doe defendant, but did not reveal the terms of the settlement agreements. Two of the defendants who agreed to consent judgments were not represented by counsel. *See, e.g.*, ECF No. 15 (Doe No. 8), ECF No. 24 (Doe No. 4).² Plaintiff moved to dismiss Doe Defendants [*4] 2 and 11.

As to the Doe defendants who did not settle immediately ( Does 1, 3, 6, and 7), Plaintiff filed a motion requesting that the Court authorize a *Fed. R. Civ. P. ("Rule") 45* deposition of each IP address subscriber.

(ECF 32.) The Court granted Plaintiff's motion. (ECF 33.) Plaintiff later dismissed Doe Defendants 3, 6, and 7, noting that Plaintiff was unable to identify a likely defendant with sufficient particularity to permit Plaintiff to proceed. (ECF Nos. 35-37.)

Doe No. 1 (the only remaining defendant, and referred to herein as "Defendant") declined to answer Plaintiff's questions at the *Rule 45* deposition, or produce any documents responsive to the *Rule 45* subpoena, asserting his rights under the *self-incrimination clause* of the Oregon Constitution and the *Fifth Amendment of the United States Constitution*. (ECF 44.) Nevertheless, Doe No. 1 agreed to a stipulated consent judgment, which this Court entered on February 17, 2016. (ECF 50.)

In the consent judgment, the parties agreed to an award of statutory damages in the (mandatory minimum) amount of $750, and also agreed that the Court should award [*5] "reasonable costs and fees" under *17 U.S.C. § 505* and *Rule 54*. (ECF 50 at 2.) On February 28, 2016, Plaintiff filed its fee application, seeking $4,706.60 in fees, and $190.20 in costs. (ECF 51, 53.) Defendant responded to the motion, asking the Court to reduce or deny the requested fee award, in part, because to award attorney fees in this case would result in the "court . . . enforc[ing] [Plaintiff's] legal extortion of Defendant (and other similarly situated persons)." (ECF 54 at 7.)

## DISCUSSION

### A. Plaintiff's Bill of Costs

Plaintiff seeks a $190.20 cost award, including the $70 it incurred to subpoena Comcast, $45 to reimburse Defendant for appearing at the *Rule 45* deposition, and $75.20 for the

---

² The district has since established a panel of lawyers who volunteer to provide up to three hours of pro bono legal advice to subscribers and defendants in these actions. *See* Standing Order 2016-7.

deposition transcript. Defendant does not oppose the request. The Court has reviewed Plaintiff's cost bill and finds that the requested costs are appropriate to award. See 28 U.S.C. § 1920 (authorizing taxation of costs).

## B. Plaintiff's Motion for Attorney Fees

### 1. Attorney Fee Awards in Copyright Cases are Discretionary.

The Copyright Act provides, in relevant part:

> In any civil action under this title, a court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as [*6] otherwise provided by this title, the court *may* also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505 (emphasis added). The Supreme Court has held that a district court may exercise its discretion to grant, or deny, attorney fees to a prevailing party in a copyright case. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) ("[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."); see also McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 323 (9th Cir. 1987) ("[W]e do not believe Congress intended that the prevailing plaintiff should be awarded attorney's fees in every case."); Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1197 (9th Cir. 2001) (affirming denial of plaintiff's motion for attorney fees); Buck v. Bilkie, 63 F.2d 447, 447 (9th Cir. 1933) (same). Indeed, the Supreme Court recently reiterated, in a unanimous decision, that "§ 505 grants courts wide latitude to award attorney's fees based on a totality of circumstances in a case." Kirtsaeng v. John Wiley & Sons, Inc., __ U.S. __, 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016). The Supreme Court emphasized that "§ 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions[.]" Kirtsaeng, 136 S. Ct. at 1988.

The Supreme Court has identified "several nonexclusive factors to guide courts' discretion," including "frivolousness, motivation, objective unreasonableness (both in the factual and in [*7] the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty, 510 U.S. at 534 n.19 (citation and quotation marks omitted); see also Petrella v. Metro-Goldwyn-Mayer, Inc., 695 F.3d 946, 957 (9th Cir. 2012) (affirming denial of motion for attorney fees in copyright case, and noting that district courts should consider, "'among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence'") (citation omitted), rev'd on other grounds, __ U.S. __, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014). In Kirtsaeng, the Supreme Court noted that a court may also consider the need to "deter . . . overaggressive assertions of copyright claims[.]" 136 S. Ct. at 1989.

The Ninth Circuit has held that "[t]he most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act," Mattel, Inc. v. MGA Entm't, 705 F.3d 1108, 1111 (9th Cir. 2013), and that the primary purpose of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public." SOFA Entm't, Inc. v. Dodger Prods., Inc., 709 F.3d 1273, 1280 (9th Cir. 2013). See also Fogerty, 510 U.S. at 527 ("[C]opyright law

ultimately serves the purpose of enriching the general public through access to creative works[.]").

Recently, another court in this district denied a motion [*8] for attorney fees in a similar BitTorrent copyright case, in part because "[l]itigation conduct that needlessly increases the expense of resolving copyright disputes neither encourages innovation nor appropriately rewards an author's creation." See Countryman Nevada, LLC v. Doe-73.164.181.226, F. Supp. 3d , No. 3:15-cv-433-SI, 2016 U.S. Dist. LEXIS 79172, 2016 WL 3437598, at *8 (D. Or. June 17, 2016) ("[U]nder the totality of the circumstances presented, the Court exercises its discretion to deny Plaintiff any attorney's fees, notwithstanding the fact that Plaintiff has prevailed on the merits of its copyright claim.").

## 2. The Court's Discretion Applied.

In light of the totality of circumstances, the Court concludes that fee shifting is inappropriate in this case.

While a copyright holder's action against an individual BitTorrent copyright infringer is not frivolous under the Copyright Act, the degree of success in each of these BitTorrent copyright cases is minimal, in two respects. First, the $750 statutory damage award Defendant has agreed to pay is low in relation to the amount of attorney fees Plaintiff has accrued ($4,706.60), to achieve that result. See Milton H. Greene Archives, Inc. v. Julien's Auction House LLC, 345 F. App'x 244, 249 (9th Cir. 2009) (noting that limited success, such as nominal damages, may support the denial of an attorney fee award, and observing that "an award [*9] of attorneys' fees that is ten times the amount recovered in damages seems unreasonable under the circumstances"). Second, Plaintiff acknowledges that its movie, The Cobbler, has been illegally downloaded over 10,000 times in Oregon alone. (Compl. ¶ 11.) Although this case resulted in an injunction against one infringer, that result is de minimis in relation to the serious online piracy problem Plaintiff seeks to combat. On balance, the degree of success Plaintiff has achieved as the prevailing party in this litigation does not warrant requiring Defendant to fund in toto Plaintiff's enforcement of its copyright.

In addition to the degree of success obtained, the court may also consider the need for deterrence as a relevant factor in making a fee award determination. Fogerty, 510 U.S. at 534 n.19. For downloading a single movie, the Court is already requiring Defendant to pay $750 in statutory damages, as well as $190.20 to reimburse Plaintiff for its costs, for a total financial penalty of almost $1,000. As this Court has noted in other cases, a financial penalty of that magnitude is sufficient to deter Defendant, as well as others, from illegally downloading movies in the future. See, e.g., [*10] Glacier Films (USA), Inc. v. Gallatin, No. 3:15-cv-01632-SB, 2016 U.S. Dist. LEXIS 72572, 2016 WL 3148401, at *3 (D. Or. May 12, 2016) ("[C]ommon sense supports a conclusion that a $750 financial penalty for illegal downloading one movie is more than sufficiently punitive to deter others from illegally downloading free movies on the BitTorrent network. With knowledge that it will now cost $750 to watch a single movie on the BitTorrent network, consumers should be motivated instead to spend a few dollars to rent the same movie legally."). In light of the substantial damage award already imposed, an attorney fee award is not necessary to deter further infringement, nor is a fee award necessary to encourage Plaintiff to continue to protect its rights, where Plaintiff has been vigilant to date and clearly has the resources to police its copyright. See Grateful Dead Prod. v. Come 'N' Get It, No. 88 CIV. 4471 (MEL), 1994 U.S. Dist. LEXIS 3642, 1994 WL

116052, at *1 (S.D.N.Y. Mar. 25, 1994) (denying prevailing plaintiffs' application for attorney fees, noting that "substantial damages have already been assessed against the defendants [a small retail store and its owner]" and an award is not "required to encourage the plaintiffs to protect their rights" where "[t]hey have been understandably vigilant in that cause and have the resources to police their copyrights"); cf. Fogerty, 510 U.S. at 524 (rejecting comparison of fee shifting under the Civil Rights Act [*11] involving impecunious plaintiffs to fee shifting under the Copyright Act, because "'[e]ntities which sue for copyright infringement as plaintiffs can run the gamut from corporate behemoths to starving artists; the same is true of prospective copyright infringement defendants'") (citation omitted).

The Supreme Court and the Ninth Circuit have also recognized that a district court should award attorney fees only if doing so will further the purposes of the Copyright Act. In these BitTorrent copyright cases, the threat of fee-shifting has emboldened Plaintiff's counsel to demand thousands of dollars to settle a claim, even where the infringing defendant admits early in the case that they illegally downloaded the movie. See, e.g., Countryman Nevada, LLC, 2016 U.S. Dist. LEXIS 79172, 2016 WL 3437598, at *2 (noting that plaintiff demanded $8,500 to settle the case after the defendant acknowledged liability early in the case); Cobbler Nevada, LLC v. Reardon, No. 3:15-cv-01077-ST, 2015 U.S. Dist. LEXIS 168715, 2015 WL 9239773, at *2 (D. Or. Dec. 16, 2015) (noting that unrepresented defendant agreed to consent judgment in the amount of $8,500); see also Malibu Media, LLC v. Doe IP Address 66.108.67.10, No. 15 Civ. 4369 (AKH), 2015 U.S. Dist. LEXIS 87751, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("Recent empirical studies show that the field of copyright litigation is increasingly being overtaken by 'copyright trolls,' roughly defined as plaintiffs [*12] who are 'more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service. The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.'") (citation omitted). In several of these BitTorrent copyright cases, defendants have agreed to pay the plaintiff's settlement demands without the benefit of counsel, see, e.g., Reardon, 2015 U.S. Dist. LEXIS 168715, 2015 WL 9239773, at *2, and in almost every case, the settlement agreements are confidential and not subject to court approval.[3]

The Copyright Act, as it is being enforced in these BitTorrent cases, has created results inconsistent with the goals of the Act. When an individual who has illegally downloaded a movie is contacted by Plaintiff's [*13] counsel, and faces the threat of a statutory damage award that could theoretically reach $150,000 (see 17 U.S.C. § 504(c)(2)), as well as the threat of a substantial attorney fee award, the resulting bargaining process is unequal, and unfair. For this Court to award Plaintiff its attorney fees in this case would only contribute to the continued overaggressive assertion and negotiation of these Copyright Act claims. See Kirtsaeng, 136 S. Ct. at 1989 (noting that a court should consider the need to "deter . . . overaggressive assertions of copyright claims"). As another court recently noted in a similar BitTorrent case, a federal court should make its tools available only with careful

---

[3] In some cases, Plaintiff has pursued particularly vulnerable individuals. See, e.g., Cobbler Nevada, LLC v. Gonzales, No. 3:15-cv-00866-SB (targeting an adult group foster care home); Cobbler Nevada, LLC v. Snapp, No. 3:15-cv-01768-SB (targeting a woman living on Social Security disability benefits).

scrutiny, to avoid the potential for abuse:

> There is no doubt that online piracy of digital media is a major problem today. Ordinarily, the 'federal court system provides litigants with some of the finest tools available to assist in resolving disputes.' Those tools can empower copyright-owners to enforce their rights, but they are also capable of being used as instruments of abuse. Where abuse is likely, as it is here, courts should not make those tools available without careful scrutiny.

*Malibu Media, LLC*, 2015 U.S. Dist. LEXIS 87751, 2015 WL 4092417, at *6 (citation omitted). This Court has already provided many of its [*14] tools to facilitate Plaintiff's enforcement of its copyright, including allowing ex parte discovery to identify the alleged infringers. However, exercising the Court's discretion to require Defendant to pay thousands of dollars in attorney fees, for illegally downloading a single movie, would render an inequitable outcome that is inconsistent with the policies served by the Copyright Act. *See Fogerty, 510 U.S. at 524* ("[T]he policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement."); *Warner Bros Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1127 (2d Cir. 1989)* ("In the district court's discretion, fees need not be awarded if the award would not vindicate underlying statutory policies or it would be inequitable.") (citations omitted).

For these reasons, under the totality of the circumstances presented, the Court exercises its discretion to deny Plaintiff's motion for attorney fees.

## CONCLUSION

For the reasons stated, Plaintiff's motion for attorney fees (ECF No. 51) is DENIED, and Plaintiff's Bill of Costs (ECF No.53) is GRANTED. Costs are awarded in the amount of $190.20.

**IT IS SO ORDERED.**

DATED this 10th day of August, 2016.

/s/ Stacie F. Beckerman

STACIE F. BECKERMAN

United States Magistrate Judge **[*15]**

End of Document